## Juan F. Portuondo Cigar Manufacturing Company v. Vicente Portuondo Cigar Manufacturing Company.

*Trade-marks—Name—Portuondo cigar—Trade name—Unfair competition in trade—Fraud—Injunction—Equity—Laches—Estoppel.*

A dealer will be enjoined from using trade-marks, labels, and indices where they bear such resemblance to those of another dealer that it is impossible to reach any other conclusion than that they were designed from those of the other dealer, with not too much variation to prevent them from being accredited by the unobservant and unwary to the other dealer, and with just enough variation to distinguish one from the other when comparison is made between them.

The general rule is that anything done by a rival in the same business, by imitation or otherwise, designed or calculated to mislead the public in the belief that in buying the product offered by him for sale, they were buying the product of another manufacturer, is in fraud of that other's rights, and will afford just ground for equitable interference.

Where a dealer not only simulates the labels, marks and designs of a rival, but addresses advertisements and circulars to the trade containing claims calculated to create the belief, contrary to the truth,

that his goods, and not those of his rival, are the original goods known to the public under a particular name, such dealer is guilty of unfair competition in trade as well as an infringement of trade-mark, and will be duly enjoined.

Where a dealer manufactures and sells cigars which become widely known by the dealer's name, and he eventually incorporates his business, using his name in the corporate title, the corporation so formed has a standing in equity to enjoin another corporation from using the same name in its title, and in its business, where it appears that the second corporation based its claim to the use of the name from a brother of the original dealer who had left the dealer's employment, started a similar business in which he used the family name, subsequently became bankrupt, and thereafter made the assignment of the alleged right to use the name; and this is the case although the first corporation had never enjoined the brother from using the name, and had stood silent while the second corporation was spending large sums in extending its business under the name in controversy.

In such a case the mere assignment of a name, without an assignment of any secret process or particular formula for making the cigars, is evidence that the assignment is a fraud on the first corporation's rights, and is in itself sufficient to deprive the second corporation from claiming any benefit whatever from the doctrine of laches and estoppel.

Where a party would be denied relief, because of his own laches, against a particular infringer, the immunity which results to the latter is not a right which can be made the subject of assignment to another.

The doctrine of estoppel is only applied to promote justice and fair dealing; never to aid a fraudulent purpose.

ELKIN, J., dissents.

Argued March 30, 1908.   Appeals, Nos. 306 and 307, Jan. T., 1907, by plaintiffs and defendants, from decree of C. P. No. 3, Phila. Co., March T., 1906, No. 1,178, on bill in equity in case of The Juan F. Portuondo Cigar Manufacturing Company v. The Vicente Portuondo Cigar Manufacturing Company, Charles H. Kors, Louis Weinberg, T. R. Goodwin and Nathan Schwab.   Before MITCHELL, C. J., MESTREZAT, POTTER, ELKIN and STEWART, JJ.   No. 306 modified and No. 307 affirmed.

Bill in equity for an injunction.
The facts are stated in the opinion of the Supreme Court.

The opinion of the court was delivered by VON MOSCH-

ZISKER, J., which apart from the formal findings of fact and conclusions of law was as follows:

In the disposition of this case the court has answered elaborate requests for findings of fact and law, in addition to making separate findings of its own. These answers and findings practically cover all the points involved, and for that reason we do not feel that the case requires extended discussion. The court is satisfied that to a considerable degree there was a studied effort on the part of Vicente Portuondo to imitate the markings, labels and general method of dressing his goods that had been pursued by Juan F. Portuondo and thereby to profit on the magic that had already been given to the name of Portuondo by his brother. When the business of Vicente Portuondo went into bankruptcy the defendants in this case purchased the labels and other markings which had been used by Vicente, and their use was continued in a like manner by these defendants. In addition to this the defendants organized the defendant corporation under the name of "The Vicente Portuondo Cigar Manufacturing Company," and advertised their goods as the original "Portuondo" cigar, using an imitation of the business signature of "Juan F. Portuondo." This course of dealing was such as to constitute that which is known in the law as unfair trade competition coupled with an infringement of a business name and in some instances infringement of trade-marks, to such an extent as to entitle the plaintiffs to relief. But the question is as to the measure of the relief that should be given. The plaintiffs and their predecessor, with full knowledge of everything that was going on, have seen fit to rest on their oars and to do nothing to protect their rights for a period of about sixteen years. During this period the business of Vicente Portuondo grew and thrived, and subsequently declined and went into bankruptcy. The tangible assets were bought from the receiver in bankruptcy and turned over to the corporation defendant in this case, which corporation also acquired, through an agreement, executed by the said Vicente Portuondo, the right to use the name of Vicente Portuondo, for which right they are now paying the widow of Vicente Portuondo a yearly allowance of $2,000.

The name of Vicente Portuondo was the lawful and proper name of that individual; and after the individual Vicente

Portuondo has been allowed the free use of his name for business purposes without any practical protest during this long and continued period of years, should a court of equity step in and use the strong hand of a chancellor to stop even a fair and proper use of the name by Vicente Portuondo if alive or by the defendant corporation under the agreement executed by him now that he is dead? That is the question. In this connection it has been strongly argued by the defendants that the plaintiffs have been guilty of such gross laches in asserting their alleged legal rights that they are not entitled to any relief in equity; and many cases are cited to sustain this position. On the other hand, the plaintiffs cite authorities to the effect that long continued acquiescence, or failure to act, in cases of infringement of trade-marks and of unfair trade competition, although amounting to unreasonable delay or inexcusable laches, will not bar the right to an injunction to stop the unfair and fraudulent conduct complained of, but will only act as a bar to the right to an accounting of profits: McLean v. Fleming, 96 U. S. 245; approved in Menendez v. Holt, 128 U. S. 514.

No Pennsylvania authorities, one way or the other, directly on this point have been presented, but the case of Gowans v. Ahlborn, 4 Kulp, 31, decided by Judge RICE when in the common pleas, follows the rule contended for by the plaintiffs. As this rule laid down by the supreme court of the United States has been followed by such an eminent Pennsylvania jurist as Judge RICE, and, further, as the rule appears to be supported by reason, we consider it controlling in the case at bar. However, as has been well said by the present chief justice of the supreme court of the United States, in Menendez v. Holt, 128 U. S. 514: "It is in the exercise of discretionary jurisdiction that the doctrine of reasonable diligence is applied, and those who seek equity must do it. A court might hesitate as to the measure of relief where the use by others for a long period under assumed permission of the owner had largely enhanced the reputation of a particular brand." So in a case like the present, where a brother who is a cigarmaker leaves the employ of his elder brother, who is likewise a cigarmaker, to start in the cigar manufacturing business for himself under his own name, and is allowed to continue the use of

that name without practical protest for a period of upwards of sixteen years, and where toward the end of this long period after business reverses an arrangement is made to continue the use of his name in the cigar manufacturing business for his own benefit, and after his death for the benefit of his estate by a payment of an annuity to his wife, and where, on the faith of this arrangement, large sums of money are paid out and invested by innocent third parties in order to thus continue the use of the name, even though it may appear that in the conduct of this business the younger brother had been guilty of certain distinct acts of unfair infringement of the elder brother's trade rights which had been continued by his successor under a belief of right—in a case like this a court may well hesitate as to the measure of relief, and the relief to be given may very properly be measured in accordance with the circumstances, taking into consideration the long delay and the effect thereof.

Of course, it can be argued that the use of the name of Vicente Portuondo by the defendant corporation, and the use of the labels and other markings by that corporation, are a new use against which the plaintiff corporation has proceeded promptly enough, and as a strict legal proposition such a contention might be maintained ; but, on the other hand, it could as well be maintained that the use of the labels, name, etc., by the plaintiff corporation, dating from the time they acquired their rights from Juan F. Portuondo, would constitute a new use. But the eyes of a chancellor will see that in both instances the facts really constitute the continuation of a prior use rather than the beginning of a new one. In considering the measure of relief to be given, it must be borne in mind that a certain business value was added to the name of Vicente Portuondo during this sixteen years by perfectly fair means and business enterprise, as well as by the unfair means complained of.

We cannot say, under these circumstances, that it is plain that Vicente Portuondo had no right in the use of his name ; we can say, however, under our findings of fact in this case, that it is perfectly plain that he had been guilty of abuses in the use of the name by his acts of unfair trade conduct. These acts stand out plainly in themselves. They speak for

themselves. They have been written down, and are therefore plain, and can be stopped in the future. Although a chancelor will not be keen to sort the good from the evil for the benefit of a sinner, yet the court may, in measuring its relief, do so for the benefit of third parties whose rights are to be directly affected, where the plaintiff has been guilty of such gross laches as in this case. After this long lapse of years, where the rights of others have intervened, we are not inclined to grant an injunction that will act to restrain a fair and proper use of the name " Vicente Portuondo " by the defendants in the conduct of their business, so long as no unfair or fraudulent trade use is made thereof. In other words, we do not feel called upon, under the circumstances of this case, to drive the defendants out of business and entirely cut off the annuity of the widow of Vicente Portuondo, which happens to be her sole and only support. However, Vicente Portuondo would not have had the right during his lifetime to use his own name in the cigar business in such a manner as to deceive the public into the belief that his business and the business of his brother were one and the same, or to have attracted custom to himself on the belief that his product was the same product as that of his brother, nor to have made any other tricky, dishonest and fraudulent use of his own name calculated to decoy the purchasing public under a misapprehension as to the real facts ; nor would he have been allowed to use the name Portuondo, standing alone as against his brother, Juan F. Portuondo, after that brother had built up a particular and general reputation for a brand of cigars known as the Portuondo cigars, and such a use of the name would have been restrained against Vicente Portuondo if alive, and will now be restrained against others claiming under him.

The use of the signature of Vicente Portuondo, which is an imitation of the Juan F. Portuondo signature, and the use of the labels, which are an imitation of the Juan F. Portuondo labels, as found by the court in its findings of facts in this case, will be restrained ; and, further, defendants will be restrained from the use of the signs, circulars and affidavit complained of by the plaintiffs which have been, and are now, being used in an unfair manner.

The exhibit " F " in plaintiffs' bill has elements of unfair trade competition about it which must be discontinued by the defendants, but we will not restrain the use of the picture of the head and shoulders of Vicente Portuondo. In this connection we will say that although plantation scenes were to a degree, and no doubt still are, in common use upon the labels in the cigar trade, still, the predominant features in the plantation scene used by the plaintiff are the negro with a hoe, occupying a particular pose, the overseer with an extended arm and the particular low house in the rear of the scene, and the general color effect. These features immediately attract the eye, and whether the overseer is put on horseback or on foot, or the negro with this particular pose is put on one side or the other of the overseer, makes but little difference. The plantation label of the defendants in several respects is plainly an imitation of this plantation label of the plaintiffs and its use must be discontinued as it now is, or in any other form, using these particular features.

It has been urged that many of the features on the cigar box of the plaintiffs, such as the word " Chico," the oval mark on the top, the red and yellow paper around the edges, are markings common to many cigar boxes in general use, and, therefore, no complaint should be made of their use by the defendants in this case. While this is true, it is also true that when we find these marks of similarity between the two boxes together, with the other imitations of labels, imitation of particular wordings and the plain imitations of the signature of Juan F. Portuondo—all these things taken together justify the finding of unfair trade conduct on the part of the defendants. Of course, the defendants have the right to use the word " Chico," but in doing so it is not necessary for them to use exactly the same type as the plaintiffs have used, nor to place it on their boxes in exactly the same position relatively to the name of the manufacturer as the plaintiffs happen to do. We would say that the defendants also have the right to use an oval mark, but in doing so care should be taken not to have it so much like the oval mark of the plaintiffs that the one would be readily taken for the other. The yellow and red edgings are stock trimmings in general use, but taken with the other imitations of plaintiffs' boxes, their use by the de-

fendants, although possibly without any particular unfair intent, appears suspicious.

The name of the defendant corporation, " The Vicente Portuondo Cigar Manufacturing Company," is plainly and unquestionably an infringement on the business name of the plaintiff corporation and will be restrained as such. It was not necessary for the defendants to have taken exactly the same words and the same arrangement of words so far as at all possible under the circumstances, in order to have found a name for their corporation ; but this they have done, as plainly appears by arranging the name of the defendant corporation under that of the plaintiff corporation, thus :

" The Juan F. Portuondo Cigar Manufacturing Company."

" The Vicente Portuondo Cigar Manufacturing Company." Such a similarity in names is in prejudice of the plaintiffs' right and will be enjoined as an infringement on the business name of the plaintiff corporation.

The plaintiffs are entitled to relief to the extent indicated in this opinion and in the findings in this case, and to that extent only.

The chief point of similarity between the markings of the boxes of the defendants and those of the plaintiffs are present and are most noticeable in certain of the " Chico " size boxes, where the coloring of the labels is the same with the exception of the caution notice which on the plaintiffs' box is printed in red, while on the box of the defendants it is printed in blue. However, the whole dressing and general appearance of these two boxes is so similar that an ordinarily careful person using due caution would be likely to be misled into buying one cigar for the other. With certain exceptions as particularly pointed out in the findings of fact, the new box of the defendants with the picture of Vicente Portuondo thereon has but few unfair markings or trimmings, but it is not shown in the testimony how extensively this new box is being used or to what extent the old box has been abandoned. The adoption of this new box, although to a degree a meritorious act on the part of the defendants, cannot be viewed without seeing therein a show of appreciation on their part of the fact that they had been guilty of certain features of imitation in their old boxes which were to be replaced by these new

ones, and, again, the placing of the word " Registered " on the plantation label of the defendants, when, in point of fact the label was not duly registered, looks suspiciously as though the defendants themselves appreciated the fact that they had no real right to register that particular label, as in its essential features it was an imitation of the duly registered plantation label of the plaintiffs.

We have not overlooked the testimony as to the words " Five cent straight " marked on the inside ends of plaintiffs' Chico box, and the like marking on the defendants' box (plaintiff's exhibit 33), nor have we overlooked the use of the brown bands around the cigars of the defendants which are like those used by the plaintiffs. But we have not been able to find any testimony to justify a finding that the plaintiffs or their predecessors adopted or used those markings prior to their use by the defendants or their predecessors.

In reaching our conclusions in this case the letters put in evidence at page 25 of the notes have not been considered. These letters were offered together in three files containing a large number of miscellaneous written orders, for the purpose of showing that the goods of the plaintiffs were therein referred to as " Portuondo " cigars, so that the inference might be drawn therefrom that the plaintiffs' cigars were popularly and generally known by that name. The fact sought to be thus established is relevant and the character of proof offered is competent, but the documents relied upon as proof in this instance were neither properly identified, nor was their history sufficiently shown, to justify the admission thereof as evidence in the case. The court further states that of all the depositions, offered at pages 6–9, and again at pages 128–131 of the notes, only the deposition of Vicente Portuondo has been considered. That particular deposition is competent as a declaration against interest, but the other depositions are not competent evidence at all in the present case.

The several features of unfairness which have been pointed out, the infringement on the plantation trade-mark, and the imitation signature must all be abandoned by the defendant corporation, and the name of that corporation must be changed so as not to infringe on the title of the plaintiff corporation. With these changes there is not any reason why both concerns

should not live and indulge in fair and honorable business competition.

And now, July 3, 1907, it is ordered, adjudged and decreed :

That the Vicente Portuondo Cigar Manufacturing Company, Charles H. Kors, Louis Weinberg, Theodore R. Goodwin and Nathan Schwab, the defendants, and each of them, and their and each of their servants, agents, salesmen and all persons in privity with them or any of them, be and they are hereby perpetually enjoined as follows :

1. From using in connection with the manufacture, sale or advertisement of cigars, upon packages, boxes, cards, plates or otherwise, any representation, exactly or colorably simulating the trade-mark of the plaintiffs, The Juan F. Portuondo Cigar Manufacturing Company, called the " La Flor de Portuondo " mark, consisting of the word symbol " La Flor de Portuondo," said mark being registered in the United States patent office, August 11, 1885, No. 12,500 ; also registered in the United States patent office, December 19, 1905, No. 48,271 ; also registered in the office of the secretary of the commonwealth of Pennsylvania, January 23, 1906.

2. From using in connection with the manufacture, sale or advertisement of cigars, upon packages, boxes, cards, plates or otherwise any label, mark, picture, impression or representation, exactly or colorably simulating the trade-mark of the plaintiffs, The Juan F. Portuondo Cigar Manufacturing Company, called the " Matador," said mark being registered in the United States patent office, August 11, 1885, No. 12,499 ; also registered in the United States patent office, December 26, 1905, No. 48,428 ; also registered in the office of the secretary of the commonwealth of Pennsylvania, January 29, 1906 ; also registered in the office of the secretary of state of Illinois, October 10, 1901, and there recorded in Trade Mark Record, page 155.

3. From using in connection with the manufacture, sale, or advertisement of cigars, upon packages, boxes, cards, plates or otherwise any label, mark, picture, impression or representation, exactly or colorably simulating the trade-mark of the plaintiffs, The Juan F. Portuondo Cigar Manufacturing Company, called the " Plantation Scene " mark, said mark being registered in the United States patent office, December 29,

1885, No. 12,879; also registered in the United States patent office, December 19, 1905, No. 48,272; also registered in the office of the secretary of the commonwealth of Pennsylvania January 23, 1906; also registered in the office of the secretary of state of Illinois, October 10, 1901, and there recorded in Trade Mark Record, page 154.

4. From using in connection with the manufacture, sale or advertisement of cigars, upon packages, boxes, cards, plates or otherwise, any label, mark, picture, impression or representation, exactly or colorably simulating the personal signature of Juan F. Portuondo, or the name Vicente Portuondo in script with a dash thereunder. (Exhibit " D " of bill and described in the eighteenth finding of fact by the court in the adjudication filed in this case.) Or the corporate title " The Vicente Portuondo Cigar Manufacturing Company," or the words " genuine Portuondo," without the word " Vicente " in connection and immediately before the word " Portuondo," such word " Vicente " to be in the same size and style of type as the word " Portuondo," or the word " original" in connection with " Portuondo," or the advertisement set forth in the court's thirty-seventh finding of fact, or the word " Chicos" on cigar boxes in simulation of the style or size of type used by the plaintiffs in its word " Chicos," or the words " Trade-mark registered" on any matter excepting where actual registry thereof has been made, or a label in general imitation of the plaintiffs' end label, or inside label, or the particular small white label on the front of defendants' box with the words " The genuine Vicente Portuondo cigars are strictly Cuban hand made, and bear this label and signature Vicente Portuondo," (described in finding of fact fifty-four by the court in the adjudication filed in this case), or the words " none genuine without the signature of Vicente Portuondo," (described in finding of fact forty-six by the court in the adjudication filed in this case), or the " Trade Warning Advertisement " set forth in the court's finding of fact No. 39, or the affidavit set forth in the court's finding of fact No. 40, or the words " Only survivors of the originators making the famous Portuondo cigars," or the words " the late Joseph M. Portuondo, the founder of the famous brand of Portuondo cigars," either alone or in combination with any other word or words, or any word or words,

device or devices, color or colors, letter or letters, mark or marks of like import or so similar to any of the foregoing as to be calculated to deceive.

5. From using for any purpose whatever the word "Portuondo" unless immediately preceded by the word "Vicente" in the same size and style of letters as the word "Portuondo."

6. From using any box or boxes similar in general dress and style to the boxes marked and described in the adjudication as "Plaintiffs' Box," "Defendants' Box 1," or "Defendants' Box 11," excepting that the defendants may use the stock edging referred to in the adjudication and an oval mark on the top of the box, such mark not to contain lettering made to imitate the general effect of the mark on plaintiffs' box.

7. From holding out or representing in any way that the goods manufactured by the defendants are the same as those manufactured by the plaintiffs.

8. From authorizing, doing, writing, speaking or uttering any other act, matter or thing calculated to cause confusion between the goods of the plaintiffs and the goods of the defendant, with the intention of thereby entering into and indulging in unfair trade competition against the plaintiffs.

9. This decree in its operation is expressly limited to cigars sold by the defendants after the date of the entry hereof and is not to affect cigars in the hands of the defendants' customers delivered before the date of this decree; the decree to be operative on all cigars manufactured by the defendants or any of them after the date of the decree and on all cigars sold by the defendants or any of them after the date of the decree.

10. The defendants are to pay the costs of this proceeding, with the exception of the witness fees; each side to bear the cost of its respective witness fees.

Exceptions to the adjudication by both parties were dismissed, and both parties appealed.

*Errors assigned* were in the dismissal of the exceptions and the portions of the decree.

*C. Andrade, Jr.,* with him *John E. Faunce,* for the Juan F. Portuondo Cigar Manufacturing Company.

The contract does not pretend to give Vicente Portuondo

any beneficial interest whatever in the business, which was to be carried on under cover of his name.

Now, the fact that the owner of the infringing name is given only a small interest in the infringing business, is generally accepted as evidence of fraudulent intent: International Silver Co. v. Rogers Co., 113 Fed. Repr. 526 ($\frac{1}{20}$ interest); s. c., 110 Fed. Repr. 955, ($\frac{1}{8}$ interest); Garrett v. Garrett, etc., Co., 78 Fed. Repr. 472 (a few shares); Massam v. Thorley's Cattle Food Co., 42 L. T. (N. S.) 851 (1 share of stock); Melachrino Co. v. Melachrino Egyptian Cigarette Co., Cartmell's Cases Relating to Trade-marks, 223 (normal interest).

And where, as in the case at bar, the owner of the infringing name has no interest whatever in the infringing business, the presumption of fraud is all the stronger.

The rule is well settled that a bare infringing proper name in gross, not appurtenant to any going business, is unassignable as against a senior proprietor of that proper name: Weston v. Ketcham, 51 How. Pr. 455; Heinisch's Sons Co. v. Boker, 86 Fed. Repr. 765; Witthaus v. Braun, 44 Md. 303; Morgan v. Rogers, 19 Fed. Repr. 596; Bulte v. Igleheart Bros., 137 Fed. Repr. 492; Dixon Crucible Co. v. Guggenheim, 2 Brewst. 321; Falk v. American West Indies Trading Co., 180 N. Y. 445; Frazee v. Merchants' Coffee Co., 106 Offi. Gaz. 2292; McVeagh v. Valencia Cigar Factory, 32 Off. Gaz. 1124; Macmahan Pharmacal Co. v. Denver Chemical Mfg. Co., 113 Fed. Repr. 468.

The courts have held that the individual himself who was baptized with the infringing name, can be enjoined from the use of his own name: Lewis v. Langdon, 7 Simons, 421; Clark v. Clark, 25 Barb. 76; Croft v. Day, 7 Beavan, 84; Howe v. Howe Machine Co., 50 Barb. 236; Hires Co. v. Hires, 182 Pa. 346; Van Stan's Stratena Co. v. Van Stan, 209 Pa. 564.

Where the defendant is using his own name or that of another in a manner willfully calculated to deceive the public into belief that his goods are the goods of the plaintiff who bears the same name. This presents a state of facts that warrants the invocation of the injunctive power of equity; the decisions being practically unanimous: Bininger v. Clark, 60 Barb. 113; Robinson v. Storm, 103 Tenn. 40; Royal Baking Powder Co. v. Royal, 122 Fed. Repr. 337; Holloway v. Hollo-

way, 13 Beavan, 209; Russia Cement Co. v. Le Page, 147 Mass. 206 (17 N. E. Repr. 304); McLean v. Fleming, 96 U. S. 245; Morton v. Morton, 82 Pac. Repr. 664; Melachrino & Co. v. Cigarette Co., Cartmell's Cases Relating to Trade-Marks, 223; International Silver Co. v. Rogers, 67 Atl. Repr. 105.

Vicente could not license the defendants to use his name: Heinisch v. Boker, 86 Fed. Repr. 765; Meyer v. Medicine Co., 58 Fed. Repr. 884.

Vicente could not endow a corporation with his name: Fort Pitt B. & L. Assn. v. Model Plan B. & L. Assn., 159 Pa. 308; Bissell Chilled Plow Works v. Bissell Plow Co., 121 Fed. Repr. 357; Higgins Co. v. Higgins Soap Co., 144 N. Y. 462; Dixon Crucible Co. v. Guggenheim, 2 Brewster, 321; Holmes et al. v. Holmes et al. Mfg. Co., 37 Conn. 278.

The plaintiffs never acquiesced in Vicente's acts: Lee v. Haley, L. R. 5 Ch. 155.

The defense of laches is bad in law: Hoyt v. Hoyt, 143 Pa. 623; Tygert Allen Co. v. Tygert, 191 Pa. 336; McLean v. Fleming, 96 U. S. 245; Menendez v. Holt, 128 U. S. 514.

*John C. Bell*, with him *Samuel W. Salus* and *Adolph Eich-holz*, for the Vicente Portuondo Cigar Manufacturing Company et al. As against the defendant the plaintiff has not the exclusive right to " Portuondo," especially when coupled with " Vicente:" Tygert-Allen Fertilizer Co. v. Tygert, 191 Pa. 336.

Where the laches has been gross, or where the plaintiff has permitted the defendant to enhance the reputation of the particular brand that is claimed, in such cases the decisions have been uniform,—that a new right has been created in the defendant and the plaintiff is estopped from asserting his right, where the injunction has not been promptly applied for: Menendez v. Holt, 128 U. S. 514; Coats v. Thread Co., 149 U. S. 562; Clark Thread Co. v. Armitage, 74 Fed. Repr. 936; Wormser v. Levy, 59 N. Y. Super. Ct. 1; Prince's Metallic Paint Co. v. Mfg. Co., 57 Fed. Repr. 938; Woodmanse et al. Mfg. Co. v. Williams, 68 Fed. Repr. 489; La Republique Francaise v. Schultz, 94 Fed. Repr. 500; Grand Lodge A. O. U. W. v. Graham, 96 Iowa, 592; Amoskeag Mfg. Co. v.

Garner, 55 Barb. 151; Del. & Hudson Canal Co. v. Clark, 7
Blatchf. 112; Virginia Hot Springs Co. v. Hageman & Co.,
138 Fed. Repr. 855.

· Opinion by Mr. Justice Stewart, June 23, 1908:

Neither party to this controversy is satisfied with the result
reached in the court below, and as a consequence we have here
two appeals from the same decree.   We shall consider first
that of the defendants in the proceeding below.   Separate ref-
erence to each of the seventy-seven assignments of error would
be impracticable.   Fortunately the case does not require it.
More than three-fourths of them relate to the findings of fact
by the court, and the complaint with respect to each is, that it
is not supported by the evidence.   Following closely the line
indicated by each assignment we have very carefully ex-
amined the evidence in the case.   From the specific findings,
seventy-one in number, the learned court reached the general
conclusion that there was on the part of Vicente Portuondo a
studied effort to imitate the markings, labels and general
method of dressing his goods, that had been pursued by Juan
F. Portuondo, with a view to profit on the magic that had al-
ready been given to the name of Portuondo by his brother;
and that his course of dealing was such as constituted what is
known in law as unfair trade competition, coupled with an in-
fringement of the business name, and in some instances infringe-
ment of trade-marks to such extent as to entitle the plaintiff
to relief.   This general finding can be understood and applied
only as certain facts connected with the history of the case are
made known.   Juan F. Portuondo engaged in the manufacture
of cigars in the city of Philadelphia as early as 1869.   In 1885
in order that his product might be distinguished from that of
other cigar manufacturers, he adopted certain labels which be-
ing duly registered became his peculiar trade-marks, and these
he used upon the goods made in his establishment.   The cigars
manufactured by him came to be known to the trade through-
out the United States as La Flor de Portuondo, after one of
the adopted trade-marks, or Portuondo cigars, and are so gen-
erally referred to by the purchasing public.   In January, 1893,
the Juan F. Portuondo Cigar Manufacturing Company, plain-
tiff having been incorporated, Juan F. Portuondo assigned to

it the manufacturing business conducted by him, together with all the rights therein, including trade-marks, copyright labels and everything else connected therewith.    Up to the time of his death in 1906 Juan F. Portuondo was president of this company, and owned a very large majority of stock interest therein.    The company has continued uninterruptedly to the present in the business for which it was organized.    Vicente Portuondo, a brother of Juan F. Portuondo, had been employed by the latter in his factory up to 1900, when, quitting his employment there, he engaged in the cigar business with a partner under the trade name of Vicente Portuondo.    Four years later, in 1904, Vicente Portuondo filed a voluntary petition in bankruptcy and, having been adjudged a bankrupt, his property passed to the trustee.    Within three days thereafter, by agreement in writing, he sold to the individual appellants for the use of the Vicente Portuondo Cigar Manufacturing Company the other appellant, a corporation to be formed later, and which was duly incorporated under the laws of New Jersey, April 28, 1904, the right to use the name Vicente Portuondo in the title of the proposed corporation.    In May, 1904, defendant corporation purchased from the receiver in bankruptcy the entire stock and fixtures, including the labels and stationery of the business of Vicente Portuondo.    The bill filed in the case charged an improper and illegal use by defendants of labels on their manufactured goods which infringed upon trade-marks of the plaintiffs, an improper use of the name Portuondo, and a general course of unfair trade on their part towards the plaintiff, resulting in great loss to the latter.

It may be conceded that some of the specific facts found by the court are fairly disputable; but none are without support in the evidence, certainly none which might be regarded as material.    The findings with respect to those disputable are not open to review, except as manifest error is shown, and that is not the case with respect to any of them.    Were these to be passed by without consideration, there would be still enough facts in the case clearly established to sustain the final conclusion of the court as above stated.    The trade-marks, labels and indices employed by Vicente Portuondo speak for themselves.    They were not a servile and exact reproduction of those used by Juan F. Portuondo, of whom the plaintiffs are

the successors in right, but they bear such resemblance that it is impossible to reach any other conclusion than that they were designed from them, with not too much variation to pre- vent them from being accredited by the unobservant and unwary as the proper marks and labels of Juan F. Portuondo, intended to identify the goods of his own special manufacture, and with just enough variation to distinguish one from the other when comparison was made between them. Except as both were exposed to one at the same time, so that opportunity for comparison was afforded, either could readily be taken for the other. This was not accidental, could not have been, but was evidently the result of careful and studied effort. It is wholly immaterial in this connection that the labels and marks used by the defendants were the same that had been devised and used by Vicente Portuondo. The fact that he had not been enjoined from using them conferred no right upon appellants to use them. They were as much infringement under his use as under theirs.

That the course of dealing pursued by Vicente Portuondo and the defendant company, in the manufacture and sale of their goods, was unfair trade competition, coupled with infringement of business name and trade-marks, is made equally evident. This finding is not dependent upon any fact open to question. The appropriation of name, the use of simulated labels, marks and designs, would in themselves be sufficient to warrant this finding; but it has far more to rest upon. The advertisements and circulars addressed to the trade by the defendants, in which claims are made calculated to create the belief that the cigars manufactured by the defendant company are the original, if not the only, Portuondo cigars, furnish convincing proof that however excellent in quality defendants' manufactured product was, for their general acceptance in the market defendants depended far more upon the Portuondo association than upon the excellence of the goods. Value was given the name Portuondo in association with cigars, and the trade-marks and labels adopted by Juan F. Portuondo were used to distinguish cigars of his manufacture from others in the general market. The general rule is that anything done by a rival in the same business by imitation or otherwise, designed or calculated to mislead the public in the belief that in

buying the product offered by him for sale, they were buying the product of another's manufacture, would be in fraud on that other's rights, and would afford just ground for equitable interference. That is the case here. With respect to the measure of relief afforded the plaintiff by the restraining decree of the court, the defendants in the bill have no ground for complaint. It deprives them of nothing that they are entitled to; it simply protects the plaintiff company in the exclusive enjoyment of what it has shown itself to lawfully own.

The exceptions in this appeal, No. 397, January Term, 1907, are overruled.

We come now to consider the appeal of the plaintiff company. Here the complaint is that the decree comes short of giving the plaintiff the full measure of protection to which it is fairly and justly entitled under the evidence. The bill asked that defendants " be restrained from using on cigars, or in relation thereto, or in connection therewith, or in the advertisement or sale thereof, the words Vicente Portuondo or Portuondo Cigar Manufacturing Company, or any colorable imitation thereof, either alone or in connection with other words or phrases." The decree while enjoining defendants from using any of the distinctive trade-marks of the plaintiff, or devices colorably simulating them, restrains with respect to the use of the name " Portuondo " no further than to require that when used, it shall be immediately preceded by the name " Vicente," in the same size and style of letters as the word " Portuondo." It is quite evident from the opinion filed by the learned judge who sat as chancellor, that but for supposed equitable considerations having regard to the delay on the part of the plaintiff to assert its claim to the exclusive use of the name, and the amount expended by the defendants in establishing their business under the corporate name of the Vicente Portuondo Cigar Manufacturing Company, the full measure of protection asked by the plaintiff would have been afforded. While defendants claim a legal right to use the name Portuondo under and by virtue of their agreement with Vicente Portuondo, the court bases its denial of the relief asked for by plaintiff on no such grounds, but upon purely equitable considerations. Since the appeal in all such cases is to the discretionary jurisdiction of the chancellor, such considerations as these have their proper

place in the inquiry; but the question must always be as to
the weight to be allowed these under the facts of the particu-
lar case.

The findings show an exclusive original right to the use of
the name, in connection with the manufacture of cigars, in
Juan F. Portuondo; a legal transfer of that right to the plain-
tiff company; and continued prejudicial infringement of such
right by the defendants. The 32d finding is as follows:
" The name adopted for this defendant corporation, to wit:
The Vicente Portuondo Cigar Manufacturing Company, is so
similar to the title of the plaintiff corporation, that it is likely
to and has deceived the public, and thereby created a confusion
between the goods of the plaintiff and of the defendants, and
has thereby enabled the defendants to profit by the good rep-
utation of the plaintiff and its predecessors, and at the expense
of the plaintiff in the cigar trade. The combination of words
used in this name constitutes an infringement upon the busi-
ness name of the plaintiff corporation." A very careful re-
view of all the evidence in the case has satisfied us of the cor-
rectness of the findings of the learned judge. We have been
aided much in our investigation of the case by the orderly
and logical manner observed in stating these and the clearness
and conciseness with which they are expressed. Accepting
the facts as found, we are to inquire only into these considera-
tions which influenced the court to deny the plaintiff the full
measure of relief, which upon the facts as we have stated them
above, it would seem to be entitled to. These considerations
are of a purely equitable nature. They are, first, laches on
the part of the plaintiff in asserting its right to the exclusive
use of the name Portuondo in its business; and, second, the
loss that would result to the defendants in view of the large
expenditure made relying upon their right to the use of the
name.

That the plaintiff here is chargeable with laches, is an in-
ference derived by the chancellor from certain facts which ad-
mit of no dispute. Vicente Portuondo in the conduct of his
separate business, until bankruptcy overtook him in 1904, per-
sistently made use of the name Portuondo in a way that was
clearly an infringement of the rights of Juan F. Portuondo.
This was well known to the latter, who made no attempt by

legal proceeding to restrain such continued use by Vicente. It does not appear that the defendant company has to any considerable degree, if at all, enlarged upon the use of the name; but it does clearly appear, that it has continued to do all that Vicente did in this regard. Were this a proceeding by Juan F. Portuondo to restrain Vicente from using the name a chancellor might be justified in calling upon the former for some excusing explanation of his inactivity in asserting his exclusive right during all this time. We do not say that a failure in this regard would necessarily defeat his right to the protection asked, but it would certainly be a circumstance to be considered in adjusting the equities of the parties. Suppose, however, it did so result, the refusal of the court to interfere could not be construed into a recognition of any right on the part of Vicente to the use of the name. Any discussion of this case must start with the accepted fact that the original, exclusive right, was in Juan F. Portuondo. This right in him was property, as much entitled to protection as any other species of property. He and he alone could invest another with any right in connection therewith. He might by indifference and inactivity forfeit his right to claim the protection of the law against someone's invasion, and this incidentally would result in an unearned advantage to the invader, but it would invest the latter with no right in the property itself. While the latter would be secured against legal interference with his use of another's property, he would have no right in the property itself which he could sell or assign to another, or which he could assert against another attempting to make common use of it with himself. His exemption from legal interference would be purely incidental to the owner's forfeiture of right, and would be personal to himself. The mere fact that the right to protection against all other infringers would remain with the original owner, and no such right against anyone in the world could be claimed by the infringer, shows in a most conclusive way that no right of property could have been acquired by the latter. So that even though Juan F. Portuondo must have failed in any attempt to restrain Vicente from using the name in connection with his business, that fact, accepting it as a fact, establishes no right in Vicente to the thing itself. When he went into bankruptcy,

and later when he attempted to sell to the defendant company the privilege of using the name in its business, the sole and exclusive ownership of the property was in those who had acquired it from and through Juan F. Portuondo, without other qualification than that the right to exclusive enjoyment of the thing as against Vicente might not be enforcible at law, because of laches on the part of the former owner. The defendants are here claiming not an immunity from interference, but a right to property derived through purchase from Vicente Portuondo. As we have tried to show, the latter had no property right in the business name, and, therefore, could convey none. By what principle of law or equity could anyone succeed to his immunity from interference by the lawful owner? His was no right, and, therefore, was not anything that could be transferred. It results, we think necessarily, that the defendant company is in no better position to claim advantage from plaintiff's laches with respect to Vicente, than any other infringer would be. It will not be contended that the indulgence shown his brother in this regard interfered with Juan F. Portuondo's right to protection against other infringers; and yet if one could have succeeded to the immunity allowed Vicente, because of an assignment from him, why not a dozen, or for that matter a hundred or more, to the utter destruction of all value in the plaintiff's rights? We allow the tacking of an adverse possession of the land by an occupant without right, to the subsequent possession of a purchaser, to form a bar by the statute of limitation; and this may have suggested the application of like method here by analogy; but we are not dealing with the statute of limitations, but with an exemption from legal disturbances which, no matter how long enjoyed, could never ripen into a legal right or title. For the reasons stated we are of opinion that however guilty of laches Juan F. Portuondo may have been in allowing his brother Vicente to continue undisturbed in the use of the business name Portuondo, such laches can avail the defendants nothing, and ought not to be considered in connection with their present claim.

The other question while not one of estoppel, is closely akin to it, since it is allowed a determining effect in measuring the relief the plaintiff is entitled to, by the application of like principles.

The defendant corporation in its attempt to acquire a right to the use of the name Portuondo, and in various ways enlarging its manufacturing facilities and expanding its trade, has expended large sums of money. These expenditures have been made in the honest belief that their right to employ the name Portuondo was absolute, and by its use of the name the business of the company has increased to a profitable degree. A denial of this right at this time would most probably result in loss to the company, hardly, however, to the extent apprehended by the learned judge, of driving it out of business. But these facts alone can create no equity in the defendants. They can avail to this end only as it is shown that the plaintiff was guilty of such negligence, in failing to assert its adverse title to the exclusive use of the name, as to lead the defendants into a mistaken belief, and that in making their expenditure defendants acted upon such mistaken belief to their prejudice. Open, affirmative encouragement on the part of the plaintiff is not pretended; encouragement by silence is what is relied upon. But what was there in the situation that imposed on the plaintiff any duty to speak out. It was an established corporation, doing an extensive business, employing the name of Portuondo, not only in its corporate title, but on the several brands of its manufactured product. All this must have been known to the defendants who were proposing to establish a like business in the same city, through a corporation to be chartered in a foreign state, under a corporate title which would give marked prominence to the name Portuondo. Plainly here was duty resting on the defendants to make inquiry as to their rights with respect to a name thus publicly and widely employed by another. We find no corresponding duty resting on plaintiff to give warning to the defendant, for the sufficient reason, if for no other, that it does not appear, certainly there is no finding to that effect, that plaintiff had any knowledge of the contract between defendants and Vicente Portuondo until after it had been formally executed, or any knowledge of defendants' purpose to purchase the stock of Vicente, or to establish a rival corporation with title liable to be confused with its own. Not only was there no duty on plaintiff to speak out any more distinctly than it was doing through the fact of its incorporation, but no opportunity was afforded it. Besides, it

is very evident that this silence on the part of the plaintiff was not at all considered by the defendants, and in no wise induced their action. Having discussed these equitable considerations which influenced the court to deny the plaintiff the full measure of relief it asked, and having concluded that too much weight was given them, we might rest the case here; but it presents a feature which seems to have been overlooked, and which, because to our mind it outweighs every consideration of the prejudice that would result to defendant from a restraining decree, calls for some reference. Briefly, it is this,— the use by the defendant company of the name Portuondo is consistent with no honest purpose that we can discover. Defendants rest their right to the use of it on their contract with Vicente, now deceased. That contract did not introduce him as a party in the proposed business enterprise, nor did it pretend to do more than give to the defendants the right to use the name Portuondo in the corporate title. It gave to the defendants no trade secret, nothing that would require or enable them to manufacture for the market a product corresponding in peculiar quality to the cigar made by Vicente Portuondo, and which had given that cigar its special value, and made for it a distinct market. To what end did the defendants desire the name? What that peculiar quality in the Vicente Portuondo cigar was, we of course do not know; but that it characterized and distinguished this cigar from others is manifest from the extent of the public demand for it. The name stood as a pledge for this particular quality so long as Vicente was engaged in the manufacture, and equally a pledge that the cigars bearing his name were of his own manufacture. Neither in the contract, nor in any part of all this voluminous testimony, is there even a suggestion that defendants could produce cigars with this distinguishing quality. And yet they are to-day engaged in marketing a product of their own which the public is given to understand are Portuondo cigars. If the cigars manufactured by them have any claim to be called Portuondo cigars, other than because they are made by a corporation under a corporate name which includes the word Portuondo, we have failed to discover it. The facts are pregnant with suspicion that the purpose in acquiring the name, was to mislead and deceive the public into the belief that the cigars made by the company

were made, if not under the supervision of Vicente Portuondo, at least after a formula adopted and used by him, and to which the company had succeeded.    In this connection it is to be borne in mind that the doctrine of estoppel is only applied to promote justice and fair dealing ; never to aid a fraudulent purpose.    Before defendants would be entitled to any benefit whatever of this doctrine to save them from loss, they would at least have to acquit themselves of the suspicion of fraudulent purpose which their transactions naturally excite.    Apart from the circumstance here considered, our conclusions as to the equities of the case would be the same.    We have referred to it only as a matter calling for at least equal consideration with those relied upon by the court.    In our judgment it makes largely against the defendants in any attempt to balance the equities between the parties.

For the reasons stated in the opinion the appeal of the defendants to No. 397, January Term, 1907, is dismissed at the cost of appellants.    The appeal of plaintiff, No. 306, January Term, 1907, is sustained ; and it is ordered that the record be remitted to the court below with the instructions that it be amended and enlarged so as to restrain the defendant from making any use whatever of the name Portuondo in connection with the manufacture and sale of cigars.    The cost on both appeals to be paid by the defendants.

ELKIN, J., dissents in No. 306, January Term, 1907.