## Poloskey v. Pantano

*H. Clifton McWilliams, Jr.* and *McWilliams, Margolis & Coppersmith*, for plaintiffs.

*John W. Taylor*, and *Myers, Taylor & Peduzzi*, for defendants.

WOLFE, J., June 27, 1961.—Pizza, defined in Webster as a large flat tart made of bread dough spread with tomato pulp and strips of cheese and sometimes other ingredients, is an increasingly popular snack in the leisure hour eating of Americans. Plain, garnished with anchovies, or pepperoni, mushrooms, green pepper or onions, or "with everything," it has a zestful flavor of widening appeal. Around Johnstown, Cambria County, it is produced and sold by many, including plaintiffs and defendants. Plaintiffs advertise and sell under the name "Tony's Pizza." Defendants use the name "Tony's Famous Pizza." One of plaintiffs and both of defendants bear the Christian name "Anthony."

Anthony Ramono, a plaintiff, began using the name "Tony's Pizza" in January 1959. Just previous to that, he had marketed pizza with a partner under the name "Tony and Pat's." In April 1960, he was joined by the other plaintiff. Together they had six locations in the Johnstown area, since increased to nine. They advertised their product under the name "Tony's Pizza" through Johnstown radio, television and newspapers, spending over $1,000 in the half year or more preceding this lawsuit. On June 6, 1960, they registered under the Fictitious Names Act as "Tony's Pizza."

Meanwhile, defendant, Anthony P. Pantano, Jr., acquired a tavern in Johnstown in March, 1959. Carrying out plans laid the month before, he began to make and sell pizza under the name "Tony's Famous Pizza." The sign over his tavern included these words, and his station wagon, used for deliveries, bears a replica of the sign. He advertised the name in program books of various groups and organizations in the

Johnstown area. In the summer of 1960, he and the other defendant, Anthony J. Antonacci, became partners in a pizza shop erected at Seward, a small community in Westmoreland County about 11 miles from Johnstown. They registered under the name "Tony's Famous Pizza Shop" in August 1960.

About this time, there was some discussion between the parties as to whether one or the other partnership should abandon use of its name to prevent confusion. Both sides admit some confusion in the patrons and customers of each over the similarity of names. For example, a bill for the proprietor of "Tony's Famous Pizza" was mistakenly forwarded to and paid by plaintiffs. Also, a bank charge which should have been made against the account of "Tony's Famous Pizza" was made against the business known as "Tony's Pizza." When these discussions led to nothing, plaintiffs filed a bill in equity seeking to enjoin defendants from using the words "Tony's Famous Pizza," or any other similar name containing the words "Tony's Pizza."

Both sides agree that any decree of this court could only extend to marketing in Cambria County . . .

"Tony" is the commonly accepted diminutive or nickname for "Anthony." One of plaintiffs and both defendants were so christened and, therefore, have a natural right to the name "Tony." Pizza is a dictionary word, in common use to describe a food product. It is a descriptive word, calling to mind a certain basic combination of ingredients, just as do "hot dog," "hamburger" or "potato chip" or "pop corn." By combining the nickname "Tony" with the common word "pizza," have plaintiffs established their right to the exclusive use of the words, or either of them, in any combination?

As to the word "pizza": " 'Descriptive, geographical and generic words, as well as words of common or general usage belong to the public and are not capable

of exclusive appropriation by anyone. This general principle is subject to the limitation or exception that if a trade name or trade-mark or other word or words have acquired, in the trade and in the minds of the purchasing public, a special or so-called secondary meaning, i.e., have come to mean that the article is the product of a certain manufacturer or of a particular individual or corporation, such trade name or trade-mark or word or words will be protected against infringement . . .' ": Zimmerman v. B. & C. Motel Corp., 401 Pa. 278, 282.

First of all, we must consider whether a secondary meaning had attached to the phrase "Tony's Pizza" by the time one of defendants had begun to use the name "Tony's Famous Pizza." We think not. When a person advertises and markets a product, a name applied to that product acquires a secondary meaning when the public begins to associate that name with that product: Thomson-Porcelite Co. v. Harad, 356 Pa. 121. There was no evidence here that the public generally associated the pizza produced and sold under the name "Tony's Pizza" with plaintiffs exclusively. The use of the name by plaintiffs began only two month prior to the use of the name "Tony's Famous Pizza" by defendants. Although 40 years use of a trade name has been sufficient to establish a secondary meaning (Thomson-Porcelite v. Harad, supra), five years use has not: Quaker State Oil Refining Company v. Steinberg, 325 Pa. 273. Two month use, without concrete evidence that the public had formed a definite image which linked pizza sold under the name "Tony's Pizza" with these plaintiffs, is not enough to establish a secondary meaning.

As to the name "Tony": "In general, it may be stated that a person cannot obtain a monoply in a trademark or tradename consisting of his name merely, so as to debar others having the same name

from using it in their own business. The right of a person thus to use his family name is regarded as a natural right, and he may put it on his own goods or otherwise employ it in his own business, notwithstanding another person of the same name may, in that name, manufacture and sell goods of the same kind": 52 Am. Jur. Trademarks, Trade Names, etc., §64.

" 'Every man has the absolute right to use his own name in his own business, even though he may thereby interfere with and injure the business of another bearing the same name; provided he does not resort to any artifice, or do any act calculated to mislead the public as to the identity of the establishments, and to produce injury to the other beyond that which results from the similarity of names' ": Seligman v. Fenton, 286 Pa. 372.

Second, we must consider whether defendants, although entitled to the use of the name "Tony," since that is the nickname of each, may be doing some injury to plaintiffs which ought to be remedied. In Seligman v. Fenton, supra, it is pointed out that a man may use his own name in his own business, provided he does not mislead the public as to his identity or produce injury beyond that resulting from the similarity of names. In those cases where the question of the use of similar names has been considered in Pennsylvania, it has been indicated that there must be some proof of intention to deceive the public: Seligman v. Fenton, 286 Pa. 372; Hires Co. v. Hires Co., 182 Pa. 346; Juan F. Portuondo Cigar Manufacturing Co. v. Vicente Portuondo Cigar Manufacturing Co., 222 Pa. 116.

In name cases, the law of secondary meaning is not entirely applicable, because a person's name may have acquired a secondary meaning, but another person of that name would still have the natural right

to use it so long as it was not shown that he was attempting to deceive the public or mislead purchasers. It has not been shown that the public has been deceived or misled, intentionally or unintentionally, in this case. Of course, there is some confusion, but since both plaintiffs and defendants have been in business for approximately the same time in the same area and selling the same product under similar names, it is a confusion which follows naturally, and it cannot be said that either is enjoying business which ought to go to the other.

We, therefore, enter the following

*Order*

And now, June 27, 1961, plaintiffs' complaint for an injunction and other relief is hereby dismissed.