# Scranton Stove Works *v.* Clark, et al., Appellants.

*Equity jurisdiction—Unfair trade competition—Trade-marks—Imitations—Injunction.*

1. To constitute an infringement of a trade-mark a literal copy is not necessary. The test is whether the label or mark is calculated to deceive the public and lead them to suppose they are purchasing an article manufactured by a person other than the one offering it for sale. The same principles apply to unfair trade competition.

2. Anything done by a rival in the same business, by imitation or otherwise, designed or calculated to deceive the public into the belief that in buying the product offered for sale they are buying the product of another manufacturer, is a fraud on the other's rights, and affords just grounds for equitable interference.

3. In a suit in equity to enjoin unfair trade competition it appeared that plaintiff had been engaged in the manufacture of stoves and ranges for a period of many years, and had acquired a

large business; that the stoves were of a certain design and were sold in connection with certain trade names, which had been registered as trade-marks and had been continuously used by plaintiff in connection with the manufacture and sale of his wares; that defendant manufactured repair parts for the various styles of stoves manufactured by plaintiff, upon which abbreviations of plaintiff's trade name were stamped in such a way as to deceive the public into the belief that the articles were of plaintiff's manufacture. *Held,* that plaintiff was entitled to a decree restraining defendant from the use of its trade name or abbreviations thereof.

4. The fact that a party who has been guilty of unfair trade competition in imitating the trade-mark of another alleges after suit brought that he has discontinued the practices complained of, will not necessarily destroy the plaintiff's right to an injunction, especially where it appears that the defendant although notified to desist and promising so to do, had not acted in good faith but had continued in his wrongful practices.

5. Where in such case it appeared that defendant had discontinued the practices complained of ten months before the suit was brought, the plaintiff was not thereby deprived of his right to an injunction, especially where defendants contested the case and offered evidence, in support of their answer, to the effect that they had not been using plaintiff's trade-mark or injuring plaintiff's business; particularly where it appeared that, although defendant had been notified to refrain from the acts complained of and had promised so to do, he had nevertheless continued until it seemed probable that litigation would be started.

6. Where in such case the court entered a decree restraining defendant from selling or offering for sale parts for use in stoves manufactured by plaintiff without informing the purchaser that they were not of plaintiff's manufacture, the decree was too broad, the articles not being patented, and the decree was modified so as to restrain defendant from selling the articles in connection with plaintiff's trade name or abbreviations thereof, or in such way as to deceive the public into believing that they were of plaintiff's manufacture.

Argued April 12, 1916. Appeal, No. 71, Jan. T., 1916, by defendants, from decree of C. P. Luzerne Co., Jan. T., 1914, No. 8, in equity, awarding an injunction, in case of Scranton Stove Works, a corporation, v. John B. Clark and H. Cora Clark, trading and doing business as Luzerne Manufacturing Company. Before POTTER,

1916.]    Assignment of Errors—Opinion of the Court.

STEWART, MOSCHZISKER, FRAZER and WALLING, JJ. Affirmed.

Bill in equity to restrain unfair trade competition. Before WOODWARD, J.

The opinion of the Supreme Court states the facts.

The court awarded the injunction as prayed for in the bill. Defendants appealed.

*Errors assigned* were in dismissing various exceptions to findings of fact and law of the hearing judge and the decree of the court.

*G. J. Clark,* for appellants.—The abbreviations of the trade-mark were not trade-marks and as no repair parts were sold under the trade-mark specified, the bill should have been dismissed: Summers v. Shryock, 46 Pa. Superior Ct. 231; Luther v. Luther, 216 Pa. 1; Frey v. Stipp, 224 Pa. 390; Spangler Brewing Co. v. McHenry, 242 Pa. 522.

*R. W. Archbald,* with him *W. H. Reynolds, Jr.,* and *Walton Pennewill,* for appellee.—The use of initials on different parts of the stoves was wrongful.

The fact that abbreviations would be relied on was set forth in the third paragraph of the bill: Reading Stove Works, Orr, Painter & Co., v. S. M. Howes Co., 201 Mass. 437 (87 N. E. Repr. 751); Mt. Penn Stove Works v. Peter & Bro., 1 Lehigh 65.

OPINION BY MR. JUSTICE FRAZER, July 1, 1916:

Plaintiff corporation is engaged in the manufacture of stoves and ranges in the City of Scranton and for a period of many years has manufactured and sold stoves of a certain design in connection with which it has used the name "Dockash," "Wyoming Dockash" and other trade names, all of them having been registered as trademarks and continuously used by plaintiff in connection

with the manufacture and sale of its wares. The names are stamped in full on the stoves and ranges in plain letters, but abbreviated on certain smaller parts.

In 1905 defendants purchased the property of the Luzerne Manufacturing Company and continued to conduct the business as copartners under that name. A large proportion of the firm's business consisted in casting and selling repair parts for the various makes and styles of stoves used in that region. On these parts appeared the identification marks contained on the genuine parts as manufactured by plaintiff, while other patterns were without marks. Plaintiff's bill is to restrain defendants from using its trade-marks and prevent them from selling repair parts on the representation that they were of plaintiff's manufacture. The court below entered a decree enjoining defendants and their agents and employees from selling or offering for sale parts of stoves or ranges manufactured and sold by plaintiff bearing the marks belonging to the latter, and also from selling or furnishing, in response to requests for repair parts, any part not manufactured by plaintiff, whether containing its trade-mark or not, without distinctly informing the purchaser that such parts are not of plaintiff's manufacture. From the decree so entered defendants appealed.

Appellants lay particular stress on the contention that the allegations of the bill are not broad enough to cover the decree in so far as it relates to the abbreviations of trade-marks and unfair trade competition, and, as there was no evidence that defendants used the full trademarks, the decree was improperly entered. An examination of the bill convinces us this view cannot be sustained. The third paragraph avers plaintiff in the manufacture of stoves and ranges has stamped its trade-marks thereon and has placed "abbreviations of the said trademarks......on 'the various parts of the stoves and ranges." The same paragraph then avers that by reason of the long-continued use by plaintiff "the same have be-

come widely known to dealers and the public generally and are associated in their minds with the said stoves and ranges and the parts thereof manufactured by complainant." The fifth paragraph avers defendants with intent to injure plaintiff's business and "to unfairly secure part of its established trade" manufactured large quantities of parts of stoves so like corresponding parts manufactured by plaintiff as to be indistinguishable therefrom, which they are selling upon the false representation that they were manufactured by plaintiff. These averments are ample to cover both infringement of trade-marks and unfair competition by acts tending to deceive the public and thereby substitute defendants' goods for the products of plaintiff. Although it is not alleged the abbreviations used on the smaller parts of the stoves and ranges were themselves registered as trade-marks, there can be no doubt these abbreviations were effective as a means of identifying the articles and products of plaintiff's works and that defendants' use of them, in casting duplicate parts, was calculated to deceive the ordinary purchaser into believing they were manufactured by plaintiff.

To constitute an infringement of a trade-mark a literal copy is not necessary. The test is whether the label or mark is calculated to deceive the public and lead them to suppose they are purchasing an article manufactured by a person other than the one offering it for sale: Pratt's App., 117 Pa. 401. The same principles apply to unfair trade competition. "The general rule is that anything done by a rival in the same business by imitation or otherwise, designed or calculated to mislead the public in the belief that in buying the product, offered by him for sale, they were buying the product of another's manufacture, would be in fraud on that other's rights and would afford just ground for equitable interference": Juan F. Portuondo Cigar Mfg. Co. v. Vicente Portuondo Cigar Mfg. Co., 222 Pa. 116, 132. A fraudulent intent in such cases need not always be shown. "There are two classes of cases in-

volving judicial interference with the use of names, first, where the intent is to get an unfair and fraudulent share of another's business, and, second, where the effect of defendant's action, irrespective of his intent, is to produce confusion in the public mind and consequent loss to the complainant. In both cases, courts of equity administer relief without regard to the existence of a technical trademark": American Clay Mfg. Co. v. American Clay Mfg. Co., 198 Pa. 189, 193, quoted in Suburban Press v. Philadelphia Suburban Publishing Co., 227 Pa. 148. Tested by these principles the bill in the present case is sufficiently broad to warrant the relief asked for, consequently it becomes unnecessary to decide whether the use of the abbreviations should be regarded as a technical infringement of plaintiff's trade-mark.

A consideration of the findings of the court below and the evidence in the case shows a clear violation of plaintiff's rights by defendants. A purchaser who came to defendants' store to buy a "Dockash" water front, for example, was given a corresponding part manufactured by defendants and bearing the same marks or initials used by plaintiff. Beyond dispute this general practice continued for a considerable time, and during the year 1912 plaintiff sent a number of its agents, at various times, to purchase parts from defendants for the purpose of procuring evidence against them. While it is true, in making out bills, there was a statement that the pieces were sold "to fit" the particular make of stove specified and defendants' bill heads contained a stipulation that they did not "guarantee all repairs invoiced below to be original and no attempt is made to deceive the purchaser, and they are sold with that understanding," and that "if not originals we do not represent them to be made by others than ourselves," yet the manner of sale and use of the marks were calculated both to deceive the purchaser and induce him to believe he was securing genuine parts manufactured by plaintiff.

In March, 1913, on discovering plaintiff was investi-

gating their method of doing business and that proceedings would probably be instituted against them, defendants ceased manufacturing castings with plaintiff's mark on them and thereafter removed the imprints or letters from such parts in the process of making up the moulds. The method used by defendants in imitating the various pieces, was to take a genuine part manufactured by plaintiff and use it as a pattern to make an impression in sand, thus forming a mould into which molten iron was poured to make the casting. In this manner the design on the original article was reproduced on the copy. The removal of plaintiff's mark on the part was accomplished by "smoothing down" the imprint in the sand made by the lettering before pouring the molten iron into the mould.

Defendants, in their answer, aver that since March, 1913, no parts bearing plaintiff's marks or abbreviations, have been manufactured or sold by them and that they have no intention of manufacturing or selling in the future parts on which plaintiff's trade-marks or abbreviations appear. The present bill was filed January 8, 1914, about ten months subsequent to the time defendants say they ceased using plaintiff's marks and they now contend no occasion exists for the entry of a decree or injunction restraining them from doing something they have ceased to do and disclaim an intention of doing in the future.

To sustain them in this position defendants rely on several Federal Court cases. In one of them, Dodge Manufacturing Co. v. Sewall & Day Cordage Co., 142 Fed. Repr. 288, the use of plaintiff's trade-mark was immediately discontinued on request. In Ferguson-McKinney Dry Goods Co. v. J. A. Shriven Co., 165 Fed. Repr. 655, more than two years had elapsed between the discontinuance of the use of plaintiff's trade-mark and the filing of the bill. In Van Raalt v. Schenck, 159 Fed. Repr. 248, defendant in good faith believed himself to be entitled to the use of the mark in question, and, upon an

adverse decision by the patent office, promptly filed a disclaimer and executed a release submitted to him by plaintiff's attorneys and ceased absolutely to use the symbol.

On the other hand in Clark Thread Co. v. William Clark Co., 55 N. J. Eq. 658, it was held, where defendant admitted infringement at the time the bill was filed, the mere assertion that he would thereafter refrain from such act, was not a sufficient reason for refusing an injunction. And in Thomas G. Plant v. May Mercantile Co., 153 Fed. Repr. 229, it was held the mere fact that defendant ceased to use plaintiff's mark before suit was brought, was not sufficient to defeat an injunction where it appeared defendant continued its use after notice to desist and contested the suit brought to compel him to do so. The court followed the earlier case of Hutchinson v. Blumberg, 51 Fed. Repr. 829, where it was said (page 831) : "If the proof had shown that the defendant at once, on being notified of his infringement, had in good faith abandoned the use of complainant's trade-mark, his conduct in that respect might be considered by the court in fixing the terms of the decree. But the record shows that the defendant has contested every step of the case. He has put the complainants to the expense of proving every fact necessary to establish their right to the use of the trade-mark in question, and also of the fact of his (defendant's) infringement, and even, only a very few days before the case was brought on for final hearing, put in additional proof upon the point of complainant's right to the use of the word and symbol 'star.' "

This question was before the Superior Court of this State in E. T. Fraim Lock Company v. Shimer, 43 Pa. Superior Ct. 221, and it was there held the fact that defendant was without knowledge of plaintiff's prior appropriation of a trade-mark and discontinued its use as soon as notified of its previous adoption by plaintiff, was not sufficient reason for refusing an injunction and dismissing the bill where defendant in his answer denied

plaintiff's exclusive right and gave no intimation of an intention not to resume its use in the future.

In the present case defendants' answer denies they have been selling parts manufactured by them by using plaintiff's trade-marks and also that they have represented the parts so made to be the product of plaintiff's manufacture or that they have deceived or intended to deceive any person for the purpose of unfairly securing any part of plaintiff's trade. They have, also, contested the case and offered evidence in support of their answer, and while they aver, in the sixth paragraph, that, since March, 1913, none of the products of their manufacture contains letters or abbreviations used by plaintiff and that they have no intention of again affixing such letters or abbreviations to parts manufactured in the future, it appears from the testimony, however, they have not acted in such good faith as the foregoing averments and the argument of their counsel would seem to indicate. A witness for plaintiff testified to having visited defendants' place of business several years before this proceeding was begun with a view of inducing them to abandon the practice of manufacturing duplicate parts of plaintiff's stoves and as a result of the visit secured a promise that the practice would be discontinued. The promise was not kept, one of defendants admitting they continued making the castings, notwithstanding their assurance not to do so. The practice was in fact pursued until March, 1913, and was then discontinued for the apparent reason that new investigations were being made by plaintiff and that the latter had been gathering evidence against defendants for some time. A promise given under such circumstances, especially in view of the defense made to the bill, and the denial of infringement of plaintiff's trade-marks, does not indicate sufficient good faith to warrant the court in withholding the remedy to which plaintiff is entitled.

We deem it unnecessary to consider whether defendants, in making their own parts by removing the plain-

tiff's lettering in the sand moulds before making the castings, have violated the Act of April 24, 1905, P. L. 302, which makes it unlawful for any person or firm to remove a trade-mark or other device from merchandise for the purpose of using such merchandise as a pattern for reproducing the same, as this question is not clearly included in the allegations of the bill.

The decree entered by the court below is too broad, however. The first part restrains defendants "from selling or offering for sale any repair parts of stoves or ranges manufactured and sold by plaintiff, bearing any of the plaintiff's marks or indicia thereon." To this extent the decree is proper and sufficient to prevent defendants from selling repair parts by representing them to be manufactured by plaintiff. The remainder of the decree restraining defendants from selling, in response to inquiries, parts not made by plaintiff, whether they have or have not on them marks used by plaintiffs, without informing the purchaser they are not of plaintiff's manufacture, unnecessarily restricts defendants in the legitimate conduct of their business. There is no question of violation of patent rights involved in this case. Consequently it is not unlawful for defendants to imitate, and manufacture and sell as their own, an article manufactured by plaintiff. Only by virtue of complainant's rights under its trade-mark, and the rules of law relating to unfair competition, has plaintiff the right to control the business of defendants. So long therefore as defendants manufacture and sell the plain castings without marks, except their own, and without attempting to dispose of the article as a part manufactured by plaintiff, the latter has no cause to complain.

The decree of the lower court is modified and it is ordered and decreed that an injunction issue, enjoining and restraining the defendants, John B. Clark and H. Cora Clark, his wife, trading and doing business as the Luzerne Manufacturing Company, their agents, clerks, servants, workmen and employees, and every of them,

from selling, or offering for sale, repair parts of stoves or ranges bearing any of plaintiff's marks or indicia thereon, unless manufactured by plaintiff and purchased by defendants for purpose of resale. As so modified the decree of the lower court is affirmed.