## ACME CHEMICAL CO. v. DOBKIN.

Civil Action No. 5218.

District Court, W. D. Pennsylvania.

Oct. 2, 1946.

Charles Denby, of Reed, Smith, Shaw & McClay, all of Pittsburgh, Pa., and Lecher, Michael, Spohn & Best, of Milwaukee, Wis., for plaintiff.

Daniel Krause, of Krause & Boreman, all of Pittsburgh, Pa., for defendant.

GOURLEY, District Judge.

The complainant instituted this action against the defendant to enjoin and restrain him, his servants, agents and employees, from using the name "Acme Chemical Company" or any similar name incorporating the name "Acme" in the conduct of his business. In addition thereto, the complainant seeks therefor damages from the defendant, and, in addition, to have the defendant account for and pay over to the plaintiff all profits realized by the defendant upon sales of products sold by him while trading as and under the name "Acme Chemical Company."

The defendant in his answer has set up a counterclaim and demands that the Acme Chemical Company, a corporation, the plaintiff, be enjoined and restrained from using the name "Acme Chemical Company" or the name "Acme" in the conduct of its business; that the plaintiff pay to the defendant damages which the defendant has suffered by the acts of the plaintiff and

that the plaintiff pay to the defendant all profits realized upon sales of kindred products sold by the plaintiff while trading as "Acme Chemical Company" in the City of Pittsburgh, and elsewhere in Pennsylvania.

Each of the parties furthermore prays the Court to grant such other and further relief as the Court may deem just and proper.

I make the following special findings of fact:

1. Plaintiff is a corporation incorporated under and existing by virtue of the laws of the State of Wisconsin, the date of said incorporation being November 4, 1916; the principal place of business of the corporation is Milwaukee, Wisconsin, and said articles of incorporation were issued to the Corporation under the name "Acme Chemical Company".

2. The defendant is a resident and citizen of the State of Pennsylvania; the defendant has conducted his business in the City of Pittsburgh, Allegheny County, Pennsylvania, since June of 1944, and registered his said business in the Office of the Prothonotary of Allegheny County, Pennsylvania, and with the Secretary of the Commonwealth of Pennsylvania, under the Fictitious Name Act of Pennsylvania, 54 P.S.Pa. § 21 et seq., on the 22nd day of June, 1944, said business being registered under the names of Reuben Dobkin and Israel Dobkin, trading and doing business as "Acme Chemical Company", Pittsburgh, Pennsylvania.

3. The amount in controversy exceeds the amount of $3,000, exclusive of interest and costs, and the parties are residents of different states.

4. The plaintiff, Acme Chemical Company, a corporation, is not registered as a foreign corporation authorized to do business in the Commonwealth of Pennsylvania. However, the Acme Chemical Company, a corporation, maintains salesmen in Western Pennsylvania and in the City of Pittsburgh, Allegheny County, Pennsylvania, who operate from their residence. No office or other place of business is maintained, and no listing is carried in the telephone directory.

5. The plaintiff company carries on its relation through its salesmen in Western Pennsylvania in such a manner as the whole of the business conducted by the plaintiff company, through its salesmen, amounts to dealing in interstate commerce, and no business is conducted within the classification of intrastate commerce.

6. Plaintiff's business is an old, established business. The plaintiff corporation is successor to a partnership of the same name which was engaged in the same type of business from 1906 to 1916. Said partnership was in turn preceded by earlier partnerships which were engaged in similar business under different names from a date prior to 1894.

7. Plaintiff manufactures and sells numerous products which fall into three broad classes: (a) Disinfectants, deodorants, antiseptics, insecticides and similar sanitary products; (b) floor seals and waxes, and related products for maintaining floors; (c) water conditioning preparations and boiler preparations.

8. Among plaintiff's products are deodorant preparations in various forms (cakes, disks, powders, sprays, etc.) for toilet room, hospital, factory, institutional and similar use. Products of this character have been manufactured and sold by the plaintiff since long before 1929.

9. Plaintiff's various individual products are designated by separate trade names applicable to each particular product. Thus, deodorants made by plaintiff are known as "Accozone," "Klomine," "Perfumo," "Ukazone," etc.; but in each case the labels upon the boxes, cartons, drums or other containers in which the products are sold and distributed are prominently marked to show that the products are manufactured by "Acme Chemical Company."

10. All of the plaintiff's advertising and literature bear the name "Acme Chemical Company" or "Acme Chemical Co." Plaintiff has advertised nationally under its name in magazines; by direct mail; and by direct distribution of its literature by its salesmen.

11. Many hundreds of copies of various items of plaintiff's literature have

been distributed through the efforts of its salesmen in Western Pennsylvania since 1940.

12. Plaintiff spends approximately $75 per month upon advertising in Western Pennsylvania.

13. Plaintiff does a business with a total annual volume of approximately $500,000.

14. Plaintiff has made sales of its products in Western Pennsylvania at least since 1937.

15. Plaintiff only made isolated sales of its merchandise in Western Pennsylvania prior to 1937, since all matters of business were conducted by mail order.

16. Prior to November, 1940, plaintiff's sales to customers in Western Pennsylvania were made direct from plaintiff's home office. Since November, 1940, plaintiff has maintained a sales representative in Western Pennsylvania. The Western Pennsylvania territory comprises the eighteen western counties in Pennsylvania.

17. Between the period of May, 1944, and the Summer or Fall of 1944, plaintiff maintained no representative in the Western Pennsylvania territory but conducted its business solely by mail order.

18. Plaintiff has three other representatives in other territory in the State of Pennsylvania.

19. Since plaintiff has maintained a representative in Western Pennsylvania, its sales in this area have amounted to the following sums:

| | |
|---|---|
| 1940 (one month) | $ 431.61 |
| 1941 | 10,115.98 |
| 1942 | 15,755.44 |
| 1943 | 25,359.28 |
| 1944 | 14,962.97 |
| 1945 | 24,258.82 |

20. Plaintiff's sales are made primarily through the personal solicitation of its salesmen. They call upon schools and other public institutions, larger industrial establishments, hotels, stores, etc.

21. Plaintiff is commonly known and referred to not only by its full name of "Acme Chemical Company" but also as "the Acme Company"; or merely as "Acme"; or by the name "Acme" in combination with the trade name of its products, as for instance "Acme Misto Company"; and plaintiff's customers often refer to its salesmen as "the Acme man."

22. The word "Acme" is the essential part of the distinctive name by which plaintiff and its products are known and associated in the minds of the public.

23. Throughout the years of the corporate existence of the plaintiff and of the existence of the predecessor partnership of the same name, plaintiff's various products have in the public mind come to be associated and identified with plaintiff by association with the name "Acme Chemical Company."

24. Defendant has conducted his business as an individual under the registered fictitious name "Acme Chemical Company" in Pittsburgh, since about June 1, 1944.

25. Defendant's said business has constituted the manufacture and distribution of a deodorant device together with a deodorant used therein for use in stores, hotels, restaurants, and other public places of business. This device and deodorant bears the name "Aer-O-Matic Deodorizer"; said deodorant device bears a label indicating that it is a product of Acme Chemical Company, Pittsburgh, Pennsylvania.

26. Defendant does not sell to the retail trade. His method of operation is to sell to selected distributors. The distributor then provides a service to the retail trade by leasing the deodorant device to the customer and servicing the said device with deodorant blocks suitable for use therein. Defendant maintains contracts with 64 distributors in 26 states.

27. Defendant sells no other product.

28. Defendant owns the building in which he operates. His total investment, including the building, in the said business is approximately $50,000. He employs 7 employees in the manufacture of his product.

29. Defendant has advertised extensively in newspapers and magazines at a cost of approximately $150 per month. The defendant also sends quantities of lit-

erature to his distributors for the information of distributors and not for use with the retail trade. In the literature defendant is always referred to as "Acme Chemical Company of Pittsburgh, Pa." Defendant sends no literature to the retail trade. He also suggests types of advertising that distributors might use, but in each case the distributor when advertising to the public uses his own name and not the name "Acme Chemical Company."

30. Both the plaintiff and the defendant are engaged in the sale of deodorants which serve the same purpose and use but, practically speaking, work in different ways. The defendant manufactures deodorant equipment and the deodorizer is placed in said equipment through a hole in the deodorizer which fits over a metal part in the deodorant equipment. The deodorant equipment manufactured by the defendant is attached to a door and when the door opens and shuts, through the mechanical contraption, the fumes or the odor from the deodorizer is caused to circulate through the room. The plaintiff company manufactures and sells a deodorizer which is used without the aid or benefit of any equipment other than being sold in a box or a container which can be fastened or hung on a wall, or which can be removed from the container and placed in a receptacle in a room for the benefit that the deodorant may be desired. The deodorizer of the plaintiff company could not be practically used in the deodorizing equipment of the defendant. There is no hole in the deodorizer of the plaintiff and if placed in the equipment of the defendant, it would crumble and, as a result thereof, lose the perfume or deodorizing effect.

31. Defendant carries on all his business under the name "Acme Chemical Company." He is listed in the public telephone book as "Acme Chemical Company"; he advertises under that name; his literature, letterheads, boxes, etc., bear the name "Acme Chemical Company."

32. Defendant uses no means of distinguishing himself, trading as "Acme Chemical Company" from the plaintiff company other than "Acme Chemical Company, Pittsburgh, Pa."

33. Defendant intends to extend his operations into other states, where he proposes to do business under the name "Acme Chemical Company." He has already advertised his business under that name in other states.

34. Plaintiff first heard of the defendant on May 14, 1945, when one of plaintiff's customers showed plaintiff's representative a circular issued by the defendant under the name "Acme Chemical Company," and asked him whether plaintiff company had another representative in Western Pennsylvania beside him.

35. In June, 1945, plaintiff gave the defendant notice that the defendant was using plaintiff's name.

36. The only additional definite instance of confusion between the plaintiff and defendant occurred sometime in October, 1945, when the representative of the plaintiff company was securing an order from a company in the City of Pittsburgh. On this occasion the office secretary of the individual who was giving the order to the representative of the plaintiff company set forth on the order blank the address of the plaintiff company to be that of the defendant company in the City of Pittsburgh. Said secretary secured the address by referring to the telephone directory which carried a listing of the defendant company but no listing of the plaintiff company. The mistake was corrected without difficulty due to the fact that the agent of the plaintiff company ascertained said fact prior to the time that the order secured was forwarded to the offices of the plaintiff company at Milwaukee, Wisconsin.

37. By reason of the similarity of plaintiff's name and the name under which defendant is doing business, and of the similarity of their products, there is likelihood of confusion in the minds of the public as between plaintiff and defendant.

38. Defendant has not given a satisfactory explanation of his choice of the name "Acme Chemical Company" under which he is doing business. The plaintiff has not given affirmative consent or authority to the defendant to operate or conduct his business under the name "Acme Chemical Company."

39. Although the plaintiff notified the defendant to cease doing business under the name "Acme Chemical Company" in June of 1945, the defendant has failed to do so.

## Discussion.

It is well to first consider that a corporate name is in the nature of property right. Under the law the corporate name is a necessary element of a corporation's existence. There is an important distinction between a corporate name and an individual name in respect to the manner of their acquisition. The corporation acquired its name by choice and need not select a name identical with or similar to one already appropriated by a senior corporation while an individual's name is thrust upon him. This same principle is true when an individual who registers under the Fictitious Name Act of the Commonwealth of Pennsylvania selects a name under which he desires to do business. As a result thereof, prior lawful entry into a field under a legally adopted name and by prior appropriation and use thereof, a corporation acquires a right to such name which the law will regulate and protect. Standard Oil Co. of New Mexico v. Standard Oil Co. of California, 10 Cir., 56 F.2d 973.

It is sometimes confusing as to whether a name of a corporation is to be regarded as a trade-mark, a trade-name, or both. To some extent the two terms overlap, but there is a difference, more or less, definitely recognized, which is, that, generally speaking, the former is applicable to the vendible commodity to which it is affixed, the latter to a business and its goodwill. A corporation name, therefore, seems to fall more appropriately into the latter class or that of a trade-name. The precise difference, however, is not often material, since the law affords protection against its appropriation in either view upon the same fundamental principles. Any act which produces confusion or uncertainty concerning the corporate name is well calculated to affect the identity and business of the corporation. As a matter of fact, in some degree at least, the natural and necessary consequence of the wrongful appropriation of a corporate name is to injure the business and rights of a corporation by destroying or confusing its identity. The general doctrine is that courts of equity not only will enjoin the appropriation and use of a trade-mark or a trade-name where it is completely identical with the name of the corporation, but will enjoin such an appropriation and use where the resemblance is so close as to be likely to produce confusion as to such identity, to the injury of the corporation to which the name belongs. Any act committed by the junior individual who uses the corporate name which would cause damage to the credit or reputation for integrity and fair dealing of the senior corporation, as committed by the latter, would injure it if the public, because of the similarity of the name, should attribute such act to the senior corporation. American Steel Foundries v. Robertson, 269 U.S. 372, 380, 381, 46 S.Ct. 160, 70 L.Ed. 317.

Unless the junior business which is conducted under a name similar or the same as the senior business, is so formed and distinctly removed as to create absolute insurance against the public confusing the two, it is unlawful. This is true for the reason that the appropriation of the name of a corporation, regardless of whether it is a junior corporation or an individual doing business under a fictitious name, the use of the senior corporate name not only would lead to confusion but would amount to an appropriation of the reputation that goes with the use of the name, and removes that reputation from the power of the owner to protect. Standard Oil Co. of New Mexico v. Standard Oil Co. of California, 10 Cir., 56 F.2d 973.

The Court has carefully considered the authorities cited by both the plaintiff and the defendant, and has made a very exhaustive and thorough investigation of the question involved, and will refer to the same in some detail.

In the case of Akron-Overland Tire Co. v. Willys-Overland Co., 3 Cir., 273 F. 674, the court enjoined the Akron-Overland Tire Company from using the word "Overland" in a proceeding filed by the Willys Overland Company where the Tire Company was engaged in the business of retreading automobile tires and in the sale

of its stock and securities, and where the Willys Overland Company was engaged solely in the business of manufacturing automobiles.

In the case of Wall v. Rolls-Royce of America, 3 Cir., 4 F.2d 333, Howard Wall engaged in business under the name "Rolls-Royce Tube Company," and carried on the business of selling radio tubes. On complaint of Rolls-Royce of America, Inc., which engaged solely in the manufacture, distribution and sale of automobiles, aeroplanes and parts thereof, the Court enjoined Wall from using the name "Rolls-Royce Tube Company." The court furthermore held that to permit the use of said name would convey to the public a false impression of some supposed connection between the two companies.

In the case of In re Long's Hat Stores Corp. v. Long's Clothes, Inc., 224 App.Div. 497, 231 N.Y.S. 107, the court enjoined the use of the word "Long" to conduct the business as "Long's Clothes, Inc.," on complaint of Long's Hat Stores Corp., although the defendant sold a different class of merchandise from that sold by the plaintiff.

In the case of Duro Co. v. Duro Co., 3 Cir., 27 F.2d 339, the Duro Company, an Ohio corporation, engaged in the sale of small internal combustion engines under the name "Duro" and the defendant under the name of "Duro Company," a New Jersey corporation, engaged in the manufacture of spark plugs. Though making no internal combustion engines, the court enjoined the use of the word "Duro" on spark plugs due to the possibility that purchasers might be misled into believing that the spark plugs were manufactured by the same company which manufactured the combustion engines.

In the case of Yale Electric Corp. v. Robertson, D.C., 21 F.2d 467, and 2 Cir., 26 F.2d 972, the Yale and Towne Manufacturing Company engaged in the manufacture of many kinds of hardware, especially locks and keys, but not electric flash lights and batteries. The court held that the former company was entitled to protection against the use of the trade-mark "Yale" by the Yale Electric Corporation on flash lights and batteries manufactured by said company.

In the case of Peninsular Chemical Co. v. Levinson, et al., 6 Cir., 247 F. 658, the Peninsular Company, owner of the tradename and trade-mark "Penslar," was engaged in the sale and distribution of drug store supplies and sundries, not including cigars. The court enjoined Levinson from using the word "Penslar" in the manufacture of cigars.

In the case of Vogue Co. v. Thompson-Hudson Co. et al., 6 Cir., 300 F. 509, the court enjoined the defendant from using the name "Vogue" and the letter "V" as a label on hats in similitude of the word "Vogue" and the letter "V" used by the plaintiff as the name and mark of a style magazine which it published.

In the case of Aunt Jemima Mills Co. v. Rigney Co., 2 Cir., 247 F. 407, L.R.A.1918C, 1039, the Mills Company and its predecessors originated a trade-mark consisting of the words "Aunt Jemima's" accompanying a picture of a laughing negress, and used it in marking and selling self-rising flour. Thereafter Rigney Company registered the same name to be used for syrups and sugar cream. The court enjoined the use of such mark by Rigney and Company on syrup and sugar creams.

In the case of Del Monte Special Food Co. v. California Packing Corp., 9 Cir., 34 F.2d 774, the Packing Corporation had been engaged for many years in the production and sale of various food products under the trade-mark "Del Monte Brand," which did not manufacture or sell oleomargarine. The court enjoined the Food Company from selling oleomargarine marked with the trade-mark "Del Monte Brand." The injury to the California Packing Corporation by the use of "Del Monte Brand" by the manufacturer of oleomargarine would not result from preventing the sale of the oleomargarine but from a representation to the public that it produces a product which it does not in fact produce and over which it has no control. Its reputation for quality is, therefore, placed to some extent in the hands of a corporation who owes it no allegiance and has no concern in maintaining the high reputation

established by the former user and it is possible that the junior user may utilize the reputation established to sell to the public an inferior production. In other words, the law is concerned in making positive that nobody has any right to be placed in a position where his goods may be represented to the public as the goods of somebody else doing business under the same or a similar name.

In the case of Armour & Co. v. Master Tire & Rubber Co. et al., D.C., 34 F.2d 201, the Armour & Company engaged primarily in the preparation of meats for consumption, but also manufactured glue, sandpaper, ammonia, soap and other articles used by motorists, and was held entitled to an injunction enjoining the defendant, Master Tire and Rubber Company, from using the word "Armour" as its trademark in the business of manufacturing and selling automobile tires.

In the case of Wisconsin Electric Co. v. Dumore Co., 6 Cir., 35 F.2d 555, the Dumore Company was engaged in the manufacture of electric motors, polishers, grinders, grills, cloth cutters, hair driers, shoe driers, and drink mixers, and had used thereon its mark "Dumore." The Electric Company was engaged in the manufacture of washing machines and there was no market competition between the two companies. The court enjoined the Electric Company from marking its machines with the word "Dumore."

In the case of British-American Tobacco Co., Ltd., v. British-American Cigar Stores Co., 2 Cir., 211 F. 933, Ann.Cas. 1915B, 363, the Tobacco Company was engaged in growing tobacco, and the manufacture and selling, at wholesale, of tobacco, cigars, cigarettes, and snuff in England and the United States. The Cigar Company was engaged in the sale of cigarettes, at retail, through a chain of cigar stores in the United States. The court enjoined the Cigar Company from using the words "British-American."

In the case of Standard Oil Co. of New Mexico v. Standard Oil Co. of California, 10 Cir., 56 F.2d 973, in which each of the companies were engaged in a similar business, the court enjoined the Standard Oil Company of New Mexico from using the said name due to the confusing similarity to the Standard Oil Company of California.

In the case of Stork Restaurant, Inc., v. Marcus et al., D.C., 36 F.Supp. 90, the court restrained Albert Marcus, doing business under the name of "The Stork Club" in the City of Philadelphia, from using the name "The Stork Club" on complaint of the Stork Restaurant, Inc., which was the trade-name of the Stork Restaurant, Inc., of New York.

In the case of Rosenberg & Co. v. Elliott, 3 Cir., 7 F.2d 962, Rosenberg Company, a corporation engaged in the manufacture of clothing, used the trade-mark "Fashion Park" and registered it in three ways: "Fashion Park," "Fashion Park Clothes," and "Tailored at Fashion Park." The defendant, Elliott, engaged in the sale of hats and caps, and marked said merchandise "Fashion Park." The court enjoined Elliott from using the trade-mark "Fashion Park" on the hats and caps.

In the case of Town Hall, Inc. v. Associated Town Halls, Inc., D.C., 44 F.Supp. 315, Town Hall, Inc., engaged in the dissemination of views on all sides of controversial public questions. The court enjoined Associated Town Halls, Inc., from using the name "Town Hall" since the activities and purpose of this company were found similar to that of the plaintiff, and thereby caused confusion.

In the case of Lady Esther, Ltd., v. Flanzbaum, D.C., 44 F.Supp. 666, Lady Esther, Ltd., engaged in the sale of face powder, face creams and rouge, and the court enjoined Samuel B. Flanzbaum, doing business under the name of "Lady Esther Shoes and Lady Esther Shoe Store," which business concerned solely the sale of ladies' shoes and stockings, from using the name "Lady Esther" in the conducting of said business.

In the case of Alfred Dunhill of London, Inc. v. Dunhill Shirt Shop, Inc., D.C., 3 F. Supp. 487, the plaintiff engaged solely in the sale of smokers' supplies, using the name "Dunhill," and the court enjoined the

Shirt Shop Company from using the name "Dunhill" in the name of a corporation selling shirts.

In the case of American Products Co., a Delaware Corp., v. American Products Co., a Michigan Corp., D.C., 42 F.2d 488, the plaintiff company was engaged in the manufacture and sale of bottled noncarbonated beverages and various food products throughout the United States. The defendant was engaged in the manufacture and sale of bottled carbonated beverages and various artificial ice products. The court enjoined the Michigan corporation from using the name "American Products Company" although the name was geographical, holding that the American Products Company, a Delaware corporation, through its activities gave to the name a "secondary meaning" entitling the owner or the plaintiff company to protection in its use.

In the case of Great Atlantic & Pacific Tea Co. v. A. & P. Cleaners & Dyers, Inc., of Washington, Pennsylvania, D.C., 10 F. Supp. 450, the plaintiff company, which was engaged solely in the business of merchandising by retail teas, coffees, fruits, vegetables, and foodstuffs, commonly known as A & P Stores, was granted an injunction restraining the use of the name "A. & P. Cleaners & Dyers," which business was solely that of dyeing and cleaning of merchandise and clothes.

In the case of Beneficial Industrial Loan Corp. et al. v. Kline et al., 8 Cir., 132 F.2d 520, the personal finance company of Iowa was granted an injunction against Earl L. Kline, doing business as the Personal Finance Company, due to the similarity of the names and on the theory of confusion of identity and unfair competition.

In the case of Fox Fur Co., Inc., et al. v. Fox Fur Co., Inc., et al., D.C., 59 F.Supp. 12, I. J. Fox, Inc., had an established and successful fur business and evidence established that the corporate defendant, Fox Fur Company, Inc., which had entered the fur business, was pirating the name and good will of plaintiff. The court granted an injunction against the defendant, Fox Fur Company, Inc., restraining the use of the name "Fox Fur."

In the case of San Francisco Ass'n for the Blind v. Industrial Aid for the Blind, Inc., 8 Cir., 152 F.2d 532, the plaintiff organized to assist the blind, adopting the word "Blindcraft" as its trade-mark and which was used upon all of its products. The defendant organized for a similar purpose and adopted the word "Blind Kraft." The court in granting an injunction held that due to the similarity of names, the injunction should be granted, and the fact that the defendant's volume of business was comparatively small and the fact that the defendant was not aware of any competition with the plaintiff's products did not justify the use of a similar name by the defendant.

In the case of Bonds Stores, Inc., v. Bond Stores, Inc., 3 Cir., 104 F.2d 124, the plaintiff was engaged in the business of manufacturing and selling of clothing apparel and was a Maryland Corporation. The defendant sold nothing but was in the business of cleaning and repairing clothes. The court held that where a manufacturer who has given to his product a trade-name by which the product is known, and has acquired for it and for himself a reputation for excellence, has thereby acquired a sort of proprietary interest in the name, which being his property, cannot be appropriated by others. However, in view of conciliatory spirit of the defendant, which expressed its willingness to change the name to "Bond Cleaners," the court refused the injunction.

In the case of Greyhound Corp. et al. v. Goberna, 5 Cir., 128 F.2d 806, the plaintiff, Greyhound Corporation, was engaged as a common carrier of passengers by motor bus in the United States. The defendant engaged in business under the name of "Havana Greyhound Tours, Inc." The court granted an injunction restraining the use of the word "Greyhound" by the defendant for the reason that there was some similarity in the business conducted by each of the parties.

In the case of Kroll Bros. Co. v. Rolls-Royce, Ltd., et al., 126 F.2d 495, 22 C.C. P.A., Patents, 897, Court of Customs and Patent Appeals, the Rolls-Royce Com-

pany was engaged in the manufacture and sale of automobile engines, parts, airplane engines and automobiles. The defendant, Kroll Brothers, filed an application for registration of the words "Kroll's-Royce" for use on baby carriages and go carts. The court restrained the use of said words by Kroll Brothers due to the fact that confusion would exist as to the origin or maker of the goods manufactured and sold by Kroll Brothers.

In the case of Standard Brands, Inc. v. Smidler, 2 Cir., 151 F.2d 34, the plaintiff manufactured and sold canned vegetables and registered the trade-mark "V–8" for a combination of eight vegetable juices. The defendant sold dry vitamin tablets which he bought on the open market and packed in thin elongated cardboard cartons which had printed thereon "V–8" over the words "Vitamin Tablets." The court restrained the use of the symbol "V–8" by the defendant for the reason that there was a likelihood that the goods of the defendant would be confused with those of the plaintiff.

In the case of Ætna Casualty & Surety Co. v. Ætna Auto Finance, Inc., 5 Cir., 123 F.2d 582, the plaintiff insured automobile risks of all sorts; the defendant was in the automobile finance business, lending money on automobiles and arranging for the sale of insurance thereon in connection with such cars. The court enjoined the use of the words "Ætna Auto" on complaint of the plaintiff due to the confusion that would probably exist in the minds of the public.

In the case of Horlick's Malted Milk Corp. v. Horluck's Inc., 9 Cir., 59 F.2d 13, the plaintiff was engaged in the sale of powdered malted milk, selling the same only to the retailers and not to the consumers. The defendant, George F. Horluck, formed a corporation using the name "Horluck's Malted Milk Shops, Inc." There was no direct competition between the defendant and the plaintiff since the defendant sold to the consumers ice cream, sandwiches, food products and beverages, among them malted milk. The court enjoined the use of the name "Horluck's Malted Milk" or the use of the name "Horluck's" in the possessive or "Horlucks" in the plural, but not "Horluck" in connection with the business of dispensing or selling malted milk.

In the case of Standard Oil Co. of Maine, Inc. v. Standard Oil Co. of New York, 1 Cir., 45 F.2d 309, the court on complaint of the Standard Oil Company of New York restrained the Standard Oil Company of Maine from using said corporate name or any corporate name that included the words "Standard," "Standard Oil" or "Standard Oil Company."

In the case of Indian Territory Oil & Gas Co. v. Indian Territory Illuminating Oil Co., 10 Cir., 95 F.2d 711, the Indian Territory Illuminating Oil Company was engaged in the manufacture, production, and sale of crude oil, natural gas, gasoline, and other petroleum products. The defendant, designated as "Oil and Gas Company," was engaged in the production of crude oil in the pipe line. The plaintiff and defendant were not competitors. The court granted an injunction restraining the "Oil and Gas Company" from using the name "Indian Territory Oil and Gas Company" due to the similarity between the corporate names and the confusion which would exist in the minds of the public.

In the case of Great Atlantic & Pacific Tea Co. v. A. & P. Radio Stores, D.C., 20 F.Supp. 703, the court on application of the "Tea Company," although the business of the companies were not similar in any respect or competitive, restrained the defendant from using the letters "A & P" which were abbreviations of the names of the owners of the radio stores and who were engaged in the business of selling radios, washing machines and electric refrigerators.

In the case of Horlick's Malted Milk Corporation v. Horlick, 7 Cir., 143 F.2d 32, plaintiff was engaged in the manufacture and sale of malted milk. The defendant, Charles Horlick, engaged in the manufacture and sale of "Horlick Dog Food." In an action by the plaintiff to restrain the defendant from using the name "Horlick," the defendant was directed to place conspicuously on the product "Manufactured by Charles Horlick of Horlicksville, Racine, Wisconsin".

In the case of Little Tavern Shops, Inc., v. Davis, 4 Cir., 116 F.2d 903, the plaintiff was the operator of food shops and the de-

fendant engaged in the business of selling soups, sandwiches, meals, and alcoholic beverages, and used the words "Hubbard's Little Tavern Liquors." The court restrained the defendant from the use of the words "Little Tavern" in the conducting of his business.

In the case of Adam Hat Stores, Inc. v. Scherper et al., D.C., 45 F.Supp. 804, the plaintiff was engaged in the business of the selling of hats and used the words "Adam" or "Adam Hats." The defendant operated a store under the name of "Adams Hat and Shirt Shop," and featured "Adams" hats in his store. The court restrained the defendant from using the words "Adams" or "Adam" in connection with the sale of hats since there was possible danger of confusion of identity on the part of the public.

In the case of R. H. Macy & Co., Inc. v. Macy's Drug Store, Inc., et al., 3 Cir., 84 F.2d 387, on application of the plaintiff who was the owner of a retail department store, the defendant drug store was enjoined from the use of the word "Macy's." In this case the plaintiff conducted a retail department store in the City of New York and did considerable business in the City of Philadelphia, and one of its departments sold drugs, cosmetics and medicines. The defendant operated a drug store in the City of Philadelphia, and registered the name under the Fictitious Name Act as "Macy's Drug Store."

In the case of Western Auto Supply Co. v. Knox, 10 Cir., 93 F.2d 850, the plaintiff under the name of "Western Auto Supply Company" furnished supplies and accessories for all makes of automobiles. The defendant, Charles E. Knox, established a business under the name of "Western Auto Salvage Company," similar to that conducted by the plaintiff. The parties were not direct competitors since they operated in different territories. The court restrained the defendant from the use of the name "Western Auto Salvage Company" due to the similarity of names.

In the case of Kotabs, Inc., et al, v. Kotex Co., 3 Cir., 50 F.2d 810, the plaintiff manufactured sanitary menstruation pads under the trade-mark "Kotex." The defendant company produced a medicine in the form of tablets for relieving menstrual pains and other pains, and sold the tablet under "Kotex-Tablets." The defendant's product was a medicine used for the same physical ailment for which the plaintiff's product was used as an appliance; the two products are related to each other although related in different ways to the same subject. The court restrained the defendant of the use of the word "Kotex" in the name of its product.

It, therefore, appears from the consideration of the above cases that when the use of a name upon goods by a later competitor will and does lead the public to understand that such goods are the product of a concern already established and well known under that name, and when the profit of the confusion is known to, and, if that be material, is intended by the later man, the law will require him to take reasonable precautions to prevent the mistake. There is no distinction between corporations and natural persons, or individuals doing business under a fictitious name, in the above principle, which is one to prevent a fraud. All the protection which the manufacturer is entitled to get against a later person using the same name manufacturing similar goods is to require the later person to so use his name in marking his goods that they cannot be confused with the earlier manufacturer. This is true even though one of the motives of the later person was to obtain an advantage by the use of his own name. Waterman Co. v. Modern Pen Co., 235 U.S. 88, 35 S.Ct. 91, 59 L.Ed. 142.

Since the defendant is registered under the Fictitious Name Act in the Commonwealth of Pennsylvania, it is well to consider the decisions of the higher courts in the Commonwealth of Pennsylvania in connection with the problem before the Court for decision.

In the case of Juan F. Portuondo Cigar Manufacturing Co. v. Vicente Portuondo Cigar Manufacturing Co., 222 Pa. 116, 70 A. 968, the plaintiff was engaged in the manufacture of cigars and in connection therewith adopted certain labels and, as a result thereof, the cigars manufactured became known as "La Flor de Portuondo" or "Portuondo Cigars." The defendant, Vi-

cente Portuondo, a brother of the plaintiff, permitted the use of his name and, as a result thereof, a company was incorporated under the name of "Vicente Portuondo Manufacturing Company." The court adopted the general rule that anything done by a rival in the same business by imitation or otherwise, designed or calculated to mislead the public in believing that the product offered by him for sale, they were buying the product of another manufacturer, is in fraud of other's rights, and an injunction should, therefore, be issued.

In the case of Quaker State Oil Refining Co. v. Steinberg et al., 325 Pa. 273, 189 A. 473, the plaintiff was engaged in the sale of motor oil under the name "Quaker State," and the defendant engaged in a similar business under the name of "Quaker City." In the proceeding filed by the Quaker State Oil Refining Company to restrain the defendant from the use of the words "Quaker City," the injunction was refused for the reason that the name of a town, city or identification of a state or city by a commonly accepted term could not be enjoined. Commenting further, the court stated that even the most careless observer could recognize the distinction between the two: "Quaker State" denotes to all, "Pennsylvania," and "Quaker City" denotes Philadelphia.

In the case of American Clay Manufacturing Co., a corporation of Pennsylvania, v. American Clay Manufacturing Co., a corporation of New Jersey, 198 Pa. 189, 47 A. 936, the plaintiff was engaged in the manufacture and sale of building bricks, and the defendant was engaged in the manufacture and sale of fire brick and sewer pipe. The court enjoined the American Clay Manufacturing Company, a corporation of New Jersey, due to the similarity of names.

In the case of Hartman v. Cohn et al., 350 Pa. 41, 38 A.2d 22, Dwight Hartman conducted a gentlemen's tailoring shop, making men's clothing upon order and to measure, and traded under the name of "Dundee Woolen Mills, Custom Tailors." The defendant operated a ready-to-wear clothing business and advertised under the name of "Dundee Clothing Factory Sales Room." The court restrained the defend-ant from using the name "Dundee Clothing Factory Sales Room."

In the case of Pennsylvania Central Brewing Co. v. Anthracite Beer Co., 258 Pa. 45, 101 A. 925, the court held that any conduct, the natural and probable effect of which is to deceive the public, so as to pass off the goods or business of one person as and for that of another, constitutes actionable unfair trade competition. If the effect be to injure the person senior in business, the fact that the defendant had no fraudulent intent is no defense for a claim for injunctive relief.

In the case of Scranton Stove Works v. Clark et al., 255 Pa. 23, 99 A. 170, the court held anything done by a rival in the same business by imitation or otherwise, designed or calculated to deceive the public into the belief that in buying the product offered for sale they are buying the product of another manufacturer, is a fraud on the other's rights and affords just grounds for equitable relief.

In the case of Potter v. Osgood, 79 Pa. Super. 397, the plaintiff engaged in business in the City of Pittsburgh under the name of "Pittsburgh Distributing Company." His business was receiving of merchandise in bulk or car load lots, and distributing the merchandise in smaller quantities to buyers. The defendant, junior to the plaintiff, engaged in the wholesale liquor trade in the City of Pittsburgh under the name of "Pittsburgh Distributing Company." The court granted injunctive relief holding that the similarity of names tends to produce confusion in public mind and unnecessary interference and loss of plaintiff's business.

The defendant has cited numerous cases in his brief which the Court has carefully read and studied, and I conclude that they are inapplicable here due to either factional divergence or noncontrolling legal basis. It is true that from the different character of the businesses conducted by the plaintiff and defendant in the proceeding before the Court, the defendant directly does not compete with the plaintiff. This is true for the reason that the plaintiff does not manufacture any deodorant equipment and, as a result thereof, cannot compete with the defendant. Furthermore, the de-

fendant also manufactures a deodorizer which is useable only in the equipment which is manufactured by the defendant. On the other hand, the plaintiff manufactures and sells various types of deodorizers which can and are used for the same purposes as the merchandise manufactured and sold by the defendant.

The primary question, therefore, before the Court is—whether there is a possible danger to the reputation and credit of the Plaintiff Company which it is probable might arise in the minds of the public from a confusion of identity where the parties are engaged in a business of a kindred character.

Counsel has brought to the Court's attention a long list of corporations which appear in the Pittsburgh Telephone Directory which have the word "Acme" in their corporate names. This list could doubtless be definitely lengthened if consideration is given to the companies doing business with the word "Acme" in their names in Western Pennsylvania generally, which comprises twenty-four counties. However, if a wrong has been done to the plaintiff in this action, it cannot be redressed or condoned by wrongs done by others.

■ The defendant contends absolute innocence and devoidance of any intent to infringe on the business of the plaintiff. Innocence of intention to do a wrong will not avert whatever damage is done through a confusion of name. The wrong, if any, is not in the similarity of names but in the use made of the name in producing confusion of identity of person. The only effective remedy is the change of name or such use of it as that all danger of mistake in identity of the person could be avoided. Bond Stores, Inc., v. Bond Stores, Inc., 3 Cir., 104 F.2d 124.

■ It has furthermore been definitely settled as a sound rule of law that a defendant may not justify its use of the name or trade-mark on the ground that the plaintiff's volume of business was comparatively small or that the defendant was not aware of any competition with the plaintiff's products. Also the plaintiff has a substantial interest in being protected against the confusion which results from the use of trade-marks on similar goods in the same trade territory. Rosenberg Brothers & Co. v. Elliott, 3 Cir., 7 F.2d 962; San Francisco Association for the Blind v. Industrial Aid for the Blind, 8 Cir., 152 F.2d 532, 537.

■ I believe it is furthermore the majority rule of law that relief may be had even though the plaintiff's and defendant's goods may be so completely different as to be in no sense competitive, and regardless of whether the goods are competitive in character, actually doing business by the plaintiff on a substantial basis in the territory where the relief is sought is not a prerequisite to the granting of relief. Phillips v. The Governor & Co., etc., 9 Cir., 79 F.2d 971; The Governor & Co., etc., v. Hudson Bay Fur Co., D.C., D.Minn., 5th Div., 33 F.2d 801; Finchley, Inc., v. Finchly Co., Inc., D.C., 40 F.2d 736; Fox Fur Co., Inc. v. Fox Fur Co., Inc. et al., D.C., 59 F.Supp. 12.

The defendant has laid considerable stress on the fact that he had invested substantial amounts of money and has created an enviable credit standing under the name "Acme Chemical Company," and that he would be substantially prejudiced if he could not continue to conduct his business under the name "Acme Chemical Company." The defendant has presented to the Court certificates of registration from the Prothonotary of Allegheny County, Pennsylvania, and the Secretary of the Commonwealth of Pennsylvania, in which it is certified that Reuben Dobkin and Israel Dobkin of the City of Pittsburgh have been duly authorized and empowered to trade under the Fictitious Name Act as "Acme Chemical Company." No reason or explanation has been given as to why Reuben Dobkin is not a party to this proceeding. The purpose of the Fictitious Name Act of the Commonwealth of Pennsylvania is to give notice to the public at large who is the owner of the business so registered. With this being done, third persons then could look to the credit of the individual so registered prior to the time that any business relations were so conducted. The argument of the defendant does not, therefore, appear sound for the reason that the

credit rating to which he refers is not that of the Acme Chemical Company, a fictitious name, but is that of the individual defendant registered under the Fictitious Name Act of the General Assembly. I do not, therefore, see how the credit standing of the defendant in this case would in any way be prejudiced by the cessation of the use of the name "Acme Chemical Company".

It must be remembered that any expenses or investments made by the defendant, or any effort extended, was done with his eyes wide open and under the evidence in this case, the defendant has no one to blame but himself. In addition, even though the expenditures were made innocently, they do not under any circumstances invest or give to the defendant the right to harm the plaintiff in the conduct of his business. Fruit Industries, Ltd., v. Bisceglia Bros. Corp., 3 Cir., 101 F.2d 752; 63 Corpus Juris 574; Straus v. Notaseme Hosiery Co., 240 U.S. 179, 36 S.Ct. 288, 60 L.Ed. 590.

It appears from the testimony that there is a necessary and probable tendency that the defendant in conducting his business under the name "Acme Chemical Company" would deceive the public, and it is probable that the defendant's goods would be considered as those of the plaintiff. As stated before, it is not necessary, in order to obtain relief from unfair competition, that any actual fraud or wrongful intent should be proven by direct evidence under the familiar principle that a person is presumed to intend the ordinary results of his actions. Furthermore to comment again on the fact that the goods of the defendant are not in direct competition with those of the plaintiff, or that they are somewhat different in kind, actual market competition is not an essential element in cases as to whether or not unfair competition exists. Though there has been shown but slight confusion, it requires nothing but comparison of the names and the fundamental character of the business done to demonstrate that there is a likelihood of future confusion. I, therefore, believe that there exists a threat, if not a promise, of growing confusion to the detriment of the plaintiff's reputation in an area in which its patrons are in part drawn. The public could very easily be confused and think that they are dealing with the plaintiff in violation of the principle that a name and reputation like a face is the symbol of its possessor and creator, and another can use it only as a mask. It also appears to me there is a purpose to reap where one has not sown, to gather where one has not planted, to build upon the work and reputation of another, the use of the advertising or trade-name of the plaintiff and, under such circumstances, it is the duty of the court to grant injunctive relief. Aetna Casualty & Surety Co. v. Aetna Auto Finance, Inc., 5 Cir., 123 F.2d 582.

It is the Court's belief that relief should be granted in favor of the plaintiff and against the defendant. In view of the authorities above referred to, and many more of like import, and after duly considering all of the questions involved and the argument submitted thereon, I am satisfied that the plaintiff has the right, as against the defendant, to the exclusive use of the name "Acme Chemical Company" or the word "Acme" as it applies to the sale of deodorants or deodorizing equipment, as indicating to the public the business and products of the plaintiff, and that it is entitled to relief in accordance with the prayer for such injunction as contained in its bill of complaint.

The prayer of the defendant to restrain the plaintiff from the use of the name "Acme Chemical Company" or the word "Acme" is dismissed without further comment.

There remains for the consideration of the Court the question of compensation to the plaintiff for the injury caused by the unlawful acts of the defendant. The defendant claims that the damage to the plaintiff, if any, is remote and conjectural, and does not furnish a proper basis for ascertaining the computation of damages.

In connection with the claim of the plaintiff for damages or profits, it must be remembered that there is no direct competition between the plaintiff and the defendant, and no testimony is in the record that the defendant's actions have deprived

the plaintiff of the sales of any of its products. As a result thereof, I find no satisfactory basis for an accounting by the defendant to the plaintiff. The case is peculiarly one where such damage as has occurred is incapable of computation. I can find no basis to hold that any substantial damage could be proved and reduced to dollars and cents with that degree of accuracy which is essential in such a case. However, if the plaintiff had lost sales or suffered substantial financial prejudice, it is true that the rule would be otherwise. Wolf Bros. v. Hamilton Brown Shoe Co., 8 Cir., 206 F. 611; Stork Restaurant, Inc. v. Marcus et al., D.C., 36 F.Supp. 90; Isador Straus et al., t/a R. H. Macy & Co., v. Notaseme Hosiery Co., 240 U.S. 179, 36 S.Ct. 288, 60 L.Ed. 590; Rosenberg & Co. v. Elliott, 3 Cir., 7 F.2d 962, 963.

I am furthermore not able to follow the defendant's final argument that it secured the right to the use of the name "Acme Chemical Company" as a result of the plaintiff having failed to maintain a representative in Western Pennsylvania during the whole of the time that it has been engaged in business, and there was a period of time when no representative existed, or that the business of the plaintiff in this area was conducted solely by mail order.

The issuance of a right to do business under the Fictitious Name Act in the Commonwealth of Pennsylvania, or the failure of the plaintiff to register in the Office of the Secretary of the Commonwealth as a fictitious corporation to do business in the Commonwealth of Pennsylvania, would not confer on the defendant, directly or indirectly, any right wrongfully to use a name already used by another, nor was it an adjudication by the State or the Prothonotary of Allegheny County of the legality of the name chosen. That is a matter for this Court to determine. Hudson Tire Co., Inc., v. Hudson Tire & Rubber Co., D.C., 276 F. 59; Great Atlantic & Pacific Tea Co. v. A. & P. Radio Stores, Inc., D.C., 20 F.Supp. 703; Indian Territory Oil & Gas Co. v. Indian Territory Illuminating Oil Co., 10 Cir., 95 F.2d 711; Sterling Products Corp. v. Sterling Products, Inc., 43 F.Supp. 548.

### Conclusions of Law.

That the plaintiff is the owner of the trade-name "Acme Chemical Company."

That the defendant's use of the trade-name "Acme Chemical Company" as an individual trade-name under the Fictitious Name Act of the Commonwealth of Pennsylvania, and otherwise in connection with the business, constitutes unfair competition with the plaintiff in violation of the law.

The plaintiff is entitled to an injunction permanently restraining the defendant, his agents, servants, attorneys and employees, from doing business and from selling or distributing deodorants, deodorizers or other products similar to the plaintiff's products under the name of "Acme Chemical Company," under any name similar to "Acme Chemical Company," or under any name which includes the word "Acme."

The plaintiff is not entitled to recover any damages from the defendant, nor is the plaintiff entitled to an accounting by the defendant.

Defendant's counterclaim is dismissed both as to the use of the name "Acme Chemical Company" or the word "Acme" by the plaintiff, and for an accounting of profits by the plaintiff to the defendant.

Defendant should pay the costs of this proceeding.

A decree may be entered accordingly upon presentation being made of the same to the Court and on reasonable notice being given to the defendant by the plaintiff of the same.